COMMONWEALTH of Pennsylvania,
Appellee,

v.

Ronale A. HITCHCOCK, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 7, 2000.

Filed March 23, 2000.

Ronale A. Hitchcock, Pro Se, appellant.

John F. Cherry, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before McEWEN, President Judge, and CAVANAUGH, DEL SOLE, KELLY, POPOVICH, HUDOCK, EAKIN, JOYCE and STEVENS, JJ.

JOYCE, J.:

¶ 1 This is a *pro se* appeal from the order of the trial court which denied the petition for permission to appeal *nunc pro tunc* filed by Appellant, Ronale Hitchcock. For the reasons set forth below, we reverse and remand for further proceedings. Before addressing the merits of Appellant's claims, we will recount the relevant facts giving rise to this appeal.

¶ 2 During the early morning hours of October 29, 1996, Appellant entered a bar in the City of Harrisburg and began firing a .45 caliber semi-automatic weapon at four of the patrons. The barmaid, Nikia Wallace, recognized Appellant and notified the police. As a result, Appellant was arrested and charged with various offenses arising out of this incident.

¶ 3 Following a jury trial in October of 1998, Appellant was convicted of aggravated assault[1] as well as recklessly endangering another person (REAP).[2] After the jury rendered its verdict, the trial court adjudged Appellant guilty of violating an ordinance prohibiting the discharge of weapons within the city limits.[3] The Commonwealth thereafter notified Appellant of its intent to seek a mandatory minimum sentence. On November 26, 1997, the trial court sentenced Appellant to an aggregate period of six (6) to twelve (12) years' imprisonment.[4]

¶ 4 Appellant asked trial counsel, John Shugars, Esquire,[5] to file a direct appeal. *See* N.T. Sentencing, 11/26/97, at 10 (in which trial counsel acknowledged on the record that Appellant wished to appeal his sentence and convictions). Notwithstanding Appellant's request, trial counsel refused and advised Appellant that he could proceed *pro se* or with private counsel.[6] *See* Petition for Permission to File Post–Trial Motions Nunc Pro Tunc and Motion to Direct Appeal Nunc Pro Tunc, filed 11/24/98, Exhibit B (Letter of December 16, 1997 from Attorney Shugars to Appellant) (hereinafter Shugars' Letter). For reasons which do not appear of record, Appellant took no action until November 24, 1998, at which time he complied with existing caselaw and filed a *pro se* petition seeking permission to file post-sentencing motions and a direct appeal *nunc pro tunc*. The trial court summarily denied Appellant's petition.[7] Appellant timely appealed.

¶ 5 Although originally assigned to a panel for disposition, this Court *sua sponte* referred the case for *en banc* review. This

1. 18 Pa.C.S.A. § 2702(a)(1).

2. 18 Pa.C.S.A. § 2705.

3. This violation was classified as a summary offense. N.T. Trial, 10/7–8/97, at 92.

4. Appellant received a mandatory minimum sentence of five (5) to ten (10) years with respect to his aggravated assault conviction. He also was sentenced to one (1) to two (2) years for the REAP conviction. The sentences were directed to run consecutively, thus resulting in the above aggregate sentence.

5. The record reflects that although Appellant qualified for representation by the Public Defender's Office, the public defender was precluded from representing Appellant due to a conflict of interest. As a result, Attorney Shugars was appointed and represented Appellant during the trial and sentencing proceedings.

6. Attorney Shugars never petitioned the court for permission to withdraw in accordance with the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981).

7. Appellant has appended a copy of the trial court's opinion to his brief. For reasons that do not appear of record, the trial court's opinion is neither identified on the certified docketing statement nor included in the certified record submitted to this Court.

matter thus is now ripe for disposition. The sole issue presented for review is whether the trial court erred in denying Appellant's petition to file a direct appeal *nunc pro tunc.*

¶ 6 An abuse of discretion standard governs our review of the propriety of a grant or denial of an appeal *nunc pro tunc. Commonwealth v. Stock*, 545 Pa. 13, 16, 679 A.2d 760, 762 (1996). As a general rule, an appeal *nunc pro tunc* is only granted in civil cases where there was fraud or a breakdown in the court's operations. *Id.*, 545 Pa. at 18, 679 A.2d at 763. However, in criminal cases, where counsel's conduct has adversely affected the right to appeal, the courts have granted an appeal *nunc pro tunc* on the basis that the defendant's right to appeal has been denied. *Id.* "Reading the civil cases and criminal cases together, the principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to appeal where that right has been lost due to certain extraordinary circumstances." *Id.*, 545 Pa. at 19, 679 A.2d at 764 (italicization added). *Accord Commonwealth v. Peterkin*, 554 Pa. 547, 558 n. 7, 722 A.2d 638, 643 n. 7 (1998). We will review Appellant's claims with these considerations in mind.

¶ 7 The decisional authority in effect at the time Appellant's petition was filed provided that a defendant who had been deprived of the right to a direct appeal through the ineffectiveness of counsel was afforded no relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, unless he or she could demonstrate that the adjudication of guilt was rendered unreliable by counsel's ineffectiveness. *Commonwealth v. Lantzy*, 712 A.2d 288, 291–292 (Pa.Super.1998) (*en banc*), *reversed*, 558 Pa. 214, 736 A.2d 564 (1999); *Commonwealth v. Petroski*, 695 A.2d 844, 847 (Pa.Super.1997). Where a defendant was unable to prove that counsel's ineffectiveness affected the reliability of the underlying adjudication, this Court authorized a separate procedure pursuant

to which a defendant could petition for permission to appeal *nunc pro tunc. Commonwealth v. Hall*, 713 A.2d 650, 652 (Pa.Super.1998), *appeal granted*, —— Pa. ——, 749 A.2d 467, 2000 Pa. Lexis 128 (2000); *Lantzy*, 712 A.2d at 291; *Petroski*, 695 A.2d at 847. Thus, when Appellant's petition was filed, the only means of securing a reinstatement of direct appeal rights which had been lost due to the ineffectiveness of counsel was to proceed outside of the PCRA and request permission to appeal *nunc pro tunc*, unless the ineffectiveness was shown to implicate the truth-determining process. *Hall, Lantzy* (Pa.Super.) and *Petroski, supra. See also Commonwealth v. Stock*, 545 Pa. at 20–21, 679 A.2d at 764–765 (holding that counsel's failure to file a direct appeal upon the defendant's request constituted extraordinary circumstances warranting the grant of an appeal *nunc pro tunc* where the defendant was ineligible for relief under the PCRA).

¶ 8 During the pendency of this appeal, the Supreme Court reversed our determination in *Lantzy. Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999). In reaching this result, the Supreme Court specifically rejected our approval of a framework for obtaining redress outside of the PCRA and held that the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal. *Lantzy*, 558 Pa. at 222–25, 736 A.2d at 569–570. We must accordingly determine whether our Supreme Court's decision in *Lantzy* retroactively applies in this instance because Appellant did not file a PCRA petition, but instead sought reinstatement of his appellate rights via the procedure outlined by this Court in *Hall, Lantzy* and *Petroski, supra.*

¶ 9 With respect to the retroactive application of caselaw, the general rule is that "where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the rule to be prospective only, the

new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). *Accord Commonwealth v. Ardestani/Commonwealth v. Metts,* 558 Pa. 191, 196, 736 A.2d 552, 555 (1999) (quoting *Cabeza* ).[8] The rule applies with equal force in both civil and criminal cases. *Blackwell v. Commonwealth of Pennsylvania, State Ethics Commission,* 527 Pa. 172, 182, 589 A.2d 1094, 1099 (1991); *Cabeza,* 503 Pa. at 232, 469 A.2d at 148. While the general rule favors retroactive application, the appellate courts have found that a sweeping rule of retroactivity is not always justified. *Blackwell,* 527 Pa. at 182, 589 A.2d at 1099; *Commonwealth v. Tizer,* 454 Pa.Super. 1, 684 A.2d 597, 602 (1996). Retrospective application is thus a matter of judicial discretion which must be exercised on a case-by-case basis. *Blackwell,* 527 Pa. at 182, 589 A.2d at 1099. As recognized by our Supreme Court:

> The Constitution neither prohibits nor requires retrospective effect for decisions expounding new constitutional rules affecting criminal trials.... The criteria guiding resolution of the question implicate[:] (a) the purpose to be served by the new standards[;] (b) the extent of the reliance ... on the old standards[;] and (c) the effect on the administration of justice.

> The purpose to be served by the new rule should receive primary consideration. Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Conversely, the same standard strongly supports prospectivity for a decision amplifying the evidentiary exclusionary rule, the primary purpose of which is to deter unlawful police conduct.

*Commonwealth v. Miller,* 490 Pa. 457, 472–473, 417 A.2d 128, 136 (1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981) (citations and quotation marks omitted). *Accord Blackwell,* 527 Pa. at 183, 589 A.2d at 1099; *Tizer,* 684 A.2d at 602.

¶ 10 The Supreme Court's decision in *Lantzy* overruled prior caselaw and announced a new principle of law. Moreover, the Supreme Court did not indicate that its decision was to be given purely prospective effect; rather, the defendant in *Lantzy* was given the benefit of the Supreme Court's holding. We further note that Appellant preserved his claim, both in the trial court and on appeal.

¶ 11 With respect to the purpose of *Lantzy,* the rule obviously does not implicate the truth-determining function or otherwise cast doubt upon the reliability of

---

**8.** *Ardestani* and *Metts* were consolidated for appellate review. *Ardestani/Metts,* 558 Pa. at 194, 736 A.2d at 554. *Ardestani* was a plurality opinion in which Justice Saylor did not participate. *Id.,* 558 Pa. at 200, 736 A.2d at 557. The plurality opinion, authored by Justice Zappala, indicated that the rule announced in *Cabeza* should apply in criminal cases. *Id.,* 558 Pa. at 201 n. 8, 736 A.2d at 557 n. 8. Chief Justice Flaherty and Justice Cappy joined Justice Zappala's opinion. Justice Nigro authored a concurring opinion in which he noted that while *Cabeza* sets forth the general rule, sweeping retroactive application is not universally justified. *Id.,* 558 Pa. at 202, 736 A.2d at 558. Justice Nigro proceeded to apply the test articulated in *Black-*

*well* and *Miller, infra.* *Id.* Justice Castille authored a dissent that was joined by Justice Newman. Justice Castille, like Justice Nigro, does not favor sweeping retroactivity and applied the factors discussed in *Blackwell* and *Miller.* *Id.,* 558 Pa. at 561–62, 738 A.2d 435. Consequently, the Court was evenly divided on the issue of retroactivity. Plurality opinions issued by our Supreme Court do not constitute binding precedential authority. *In the Interest of O.A.,* 552 Pa. 666, 676 n. 4, 717 A.2d 490, 496 n. 4 (1998); *CRY, Inc. v. Mill Service, Inc.,* 536 Pa. 462, 469, 640 A.2d 372, 376 (1994); *Commonwealth v. Milligan,* 693 A.2d 1313, 1316 (Pa.Super.1997). *Blackwell, Miller* and their progeny thus remain good law which we are bound to follow.

Appellant's underlying conviction. It instead appears that the Supreme Court's purpose was to clearly articulate the procedure by which a defendant may collaterally challenge the effectiveness of his or her prior counsel in failing to perfect a direct appeal. In addition, litigants' reliance on prior law would have been significant for those individuals to whom it applied, as evidenced by this and other cases.[9]

¶ 12 As previously noted, Appellant chose to file a petition for permission seeking reinstatement of his right to appeal *nunc pro tunc* rather than file a futile post-conviction petition that would have been dismissed pursuant to this Court's decisions in *Hall*, *Lantzy* and *Petroski*. Appellant specifically cited to these cases as well as *Stock* in his appellate brief and in the memorandum of law filed in support of his petition. Appellant's Brief at 10–11; Petition for Permission to File Post–Trial Motions Nunc Pro Tunc and Motion to Direct Appeal Nunc Pro Tunc, filed 11/24/98, at 2. It thus appears that he relied on the existing caselaw.

¶ 13 Insofar as the effect on the administration of justice is concerned, we note that sweeping retrospective application would only concern a limited number of individuals who followed this Court's rulings in *Hall*, *Lantzy* and *Petroski*. While the total of affected defendants may be slight in comparison to the volume of criminal cases pending in the courts, retroactive application may leave such persons wholly without a remedy as their ability to obtain PCRA relief may be precluded by the time constraints in 42 Pa.C.S.A. § 9545(b). By comparison, prospective application will have no effect on those who specifically relied on prior practice and caselaw. Consideration of the above factors thus militates against sweeping retroactive application of our Supreme Court's decision in *Lantzy*.

¶ 14 If we were to retrospectively apply the Supreme Court's ruling in *Lantzy* here, Appellant's sole means of obtaining reinstatement of his direct appeal rights would be to file a petition under the PCRA. *Lantzy*, 558 Pa. at 221, 736 A.2d at 569. Unfortunately for Appellant, any such petition would be subject to the time limitation set forth in 42 Pa.C.S.A. § 9545(b). As applied here, Appellant's petition would be untimely unless he could satisfy one of the exceptions in section 9545(b). Retroactive application of our Supreme Court's decision in *Lantzy* could therefore result in the affirmance of Appellant's conviction, leaving him without any remedy.

¶ 15 Such a result is unjust. It would serve to unfairly penalize Appellant for adhering to a procedure for obtaining redress that was specifically approved by this Court. Where, as here, a defendant has been misled by the actions of the appellate court, our Supreme Court has not hesitated to grant relief in the interests of justice. *See, e.g., Commonwealth v. Tyson*, 535 Pa. 391, 394–395, 635 A.2d 623, 624–625 (1993) (granting relief in the form of a new trial where the defendant was misled by the Supreme Court's own decision); *Commonwealth v. Powell*, 527 Pa. 288, 292–294, 590 A.2d 1240, 1242–1243 (1991) (discussing the inherent right of the courts to grant relief in the interest of justice whenever it is so required).

■ ¶ 16 Viewed in this manner, we find that the trial court abused its discretion by summarily denying Appellant's petition. The record unequivocally demonstrates that Appellant asked Attorney Shugars to file a direct appeal. N.T. Sentencing, 11/26/97, at 10; Shugars' Letter, *supra*. Notwithstanding his awareness of Appellant's desires, Attorney Shugars advised that he would not file an appeal and that Appellant could proceed *pro se* or with

---

**9.** Reliance upon the law is further demonstrated in a companion case, *Commonwealth*

*v. Garcia*, 749 A.2d 928 (Pa.Super.2000) which is currently pending before this Court.

private counsel. Shugars' Letter, *supra.* This was improper.

¶ 17 Trial counsel certainly was not obligated to pursue frivolous claims on appeal. *Lantzy,* 558 Pa. at 227 n. 8, 736 A.2d at 572 n. 8. Nevertheless, he was not permitted to unilaterally withdraw. If counsel believed Appellant's claims to be wholly frivolous, he was obligated to adhere to the procedures set forth in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Commonwealth v. McClendon,* 495 Pa. 467, 434 A.2d 1185 (1981). *Lantzy,* 558 Pa. at 227 n. 8, 736 A.2d at 572 n. 8. As recognized by our Supreme Court, where there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases and denies the accused the right to the assistance of counsel as guaranteed by the United States and Pennsylvania Constitutions. *Id.,* 558 Pa. at 227, 736 A.2d at 572.

¶ 18 Because it is apparent from the face of the record that trial counsel unjustifiedly failed to file a requested direct appeal and because Appellant relied upon the procedure for obtaining redress outlined by this Court in *Lantzy,* the interests of justice require the reinstatement of Appellant's right to a direct appeal. *Tyson* and *Powell, supra.* As the trial court summarily denied Appellant's petition, we are compelled to reverse and remand. Upon remand, we direct the trial court to enter an appropriate order reinstating Appellant's right to a direct appeal *nunc pro tunc. Lantzy,* 558 Pa. at 227–28, 736 A.2d at 572–73. In addition, as it appears that Appellant is indigent, the trial court shall appoint counsel to represent Appellant.

¶ 19 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

¶ 20 STEVENS, J. files Dissenting Opinion.

STEVENS, J., dissenting.

¶ 1 I respectfully dissent as I disagree with the Majority's conclusion that *Com-*

*monwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999), does not apply retroactively.

¶ 2 As the Majority indicates, the Pennsylvania Supreme Court has held that:

[W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the rule to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). The purpose behind the aforementioned holding is that "[e]venhanded decision making requires that similarly situated individuals on direct appeal be treated the same." *Id.* at 232, 469 A.2d at 148.

¶ 3 In the case *sub judice,* as in *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999), the question on appeal is whether the Post–Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–46, is the exclusive remedy where a defendant alleges that trial counsel was ineffective in failing to perfect a direct appeal. In *Lantzy,* the Supreme Court held that the PCRA is the exclusive remedy, and, therefore, the Supreme Court rejected this Court's conclusion that an appeal *nunc pro tunc* was the proper remedy.

¶ 4 Since there is no meaningful distinction which can be drawn between the facts in the case *sub judice* and the facts in *Lantzy,* the same law should be applied. Moreover, considering the similarity between this case and *Lantzy,* I find that this case may well have been the case which set aside prior law if *Lantzy* had not been decided while this particular case was pending. As such, I find that the law enunciated in *Lantzy* should be applied to the within case.