807 A.2d 838

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Brian Charles ELLER, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2001.

Decided Sept. 25, 2002.

David Joshua Rhodes, Erie, for appellant, Brian Charles Eller.

Hugh J. Burns, Philadelphia, Bradley Henry Foulk, Erie, for appellee, Com. of PA.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice CASTILLE.

The issue on this appeal is whether the Superior Court erred in applying *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999), a decision in which this Court unanimously held that the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, "provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal," *id.* at 569–70, in a situation where appellant forwarded just such a claim, outside the framework of the PCRA and after the PCRA filing deadline expired, but before the decision in *Lantzy* was filed. Appellant argues that *Lantzy* established a new rule of procedure that cannot be applied "retroactively" to a case such as his and, thus, he is entitled to pursue an extra-PCRA remedy. For the reasons that follow, we hold that the Superior Court properly applied both the provisions of the PCRA and *Lantzy*, a decision which followed those provisions, in holding that

appellant was not entitled to pursue reinstatement of his appellate rights *nunc pro tunc* outside the PCRA. Accordingly, we affirm.

The widowed victim in this case, who suffers from multiple sclerosis, knew appellant from his frequent work-related visits to her Erie County home to service certain medical equipment that she relied upon. Appellant, correspondingly, knew that the victim was physically disabled. On September 6, 1995, the victim admitted appellant into her home to service the medical equipment, but appellant, once inside, raped the victim, whose physical condition rendered her helpless to physically resist the assault.

On January 18, 1996, appellant was charged with rape, indecent assault, and unlawful restraint. On May 5, 1997, appellant, in the face of the victim's accusation as well as collected DNA evidence, entered a negotiated plea of *nolo contendere* to the rape charge. In exchange for the plea, the Commonwealth agreed to *nolle prosse* the additional charges. There was no agreement as to sentencing. Appellant did not move to withdraw his plea prior to sentencing.

On June 11, 1997, appellant was sentenced to a six-to-twelve-year term of incarceration and a consecutive eight-year probationary term. The term of incarceration, though significantly less than the ten-to-twenty year statutory maximum, fell above the standard range of the sentencing guidelines. The trial court noted that an aggravated range guidelines sentence was warranted because appellant had selected a particularly vulnerable disabled victim and had violated a position of trust by raping her. At the time of sentencing appellant was advised of his post-sentencing rights, including his right to file post-sentencing motions, his right to appeal, and his continuing right to counsel. Appellant also signed a document which explained his post-sentencing rights, specifically acknowledging that he understood them. Appellant did not seek to withdraw his plea or to have his sentence reconsidered, nor did he file a direct appeal and thus, by operation of law, his sentence became final thirty days after its imposition, on July 11, 1997. *See* 42 Pa.C.S. § 9545(b)(3) ("a judgment

becomes final at the conclusion of direct review ... or at the expiration of time for seeking the review").

The next docket activity occurred on April 7, 1998, when appellant filed a motion for transcripts and a motion "to grant credit for time on bond as custody time." The trial court denied both motions on April 22, 1998. On June 17, 1998, appellant filed a *pro se* motion for leave to have his counsel withdrawn, which the trial court granted on June 22, 1998. On July 13, 1998, appellant filed a *pro se* motion to require the filing of an *Anders*[1] brief by appellate counsel. The trial court denied this motion, noting that appellant had already had counsel removed and, thus, he had no appellate counsel. Appellant moved for reconsideration, which was denied.

On August 6, 1998, appellant filed a *pro se* motion to appeal *nunc pro tunc* in the Superior Court. The court denied the motion on August 24, 1998. Also on August 24, appellant filed a motion to appeal *nunc pro tunc* in the trial court, which the trial court denied the same day. Appellant filed a motion for reconsideration in the trial court on September 10, 1998, which was denied, and a motion for reconsideration in the Superior Court. The Superior Court treated the reconsideration motion as a timely notice of appeal from the trial court's denial of *nunc pro tunc* relief and set a briefing schedule. The trial court subsequently filed an opinion, explaining that it denied the request for *nunc pro tunc* relief because the PCRA governed any such application.

On appeal, appellant argued that he was entitled to reinstatement of his direct appellate rights *nunc pro tunc* because his plea lawyer allegedly refused to file a direct appeal despite appellant's request that he do so. On September 1, 1999, a divided Superior Court panel affirmed the denial of *nunc pro tunc* relief. The panel majority's memorandum opinion held that it did not need to address the *nunc pro tunc* appeal claim on the merits because appellant had failed to file a PCRA petition within the one-year time limitation after his judgment became final, as is required under that Act, and he therefore

1. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

was time-barred from pursuing PCRA relief. *See* 42 Pa.C.S. § 9545(b). Citing our then-recent decision in *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999), which was filed on July 7, 1999, the panel majority noted that the PCRA is "the exclusive remedy for post-conviction claims seeking restoration of appellate rights after counsel's failure to perfect a direct appeal." Superior Court slip op. at 3. Since there was no avenue by which appellant could pursue his time-barred claim, the panel affirmed the order below. Judge Schiller dissented without opinion.

After the ruling in this case, however, subsequent published decisions of the Superior Court, sitting *en banc*, held that our decision in *Lantzy* does not apply "retroactively" to cases in which the extra-PCRA request for a *nunc pro tunc* appeal, premised upon counsel's failure to file a requested appeal, was made prior to *Lantzy* being filed. *See Commonwealth v. Hitchcock*, 749 A.2d 935 (Pa.Super.2000) (en banc); *Commonwealth v. Garcia*, 749 A.2d 928 (Pa.Super.2000) (*en banc*) (petition for allowance of appeal pending). We granted review to examine whether appellant, who was denied *nunc pro tunc* relief on an argument concerning the effect of *Lantzy* that was later accepted by the Superior Court *en banc*, is entitled to relief on grounds that *Lantzy* established a new procedural rule that cannot be retroactively applied to him. The matter has been ably briefed and argued, including argument on the validity of the retroactivity analysis that powered the decisions in *Garcia* and *Hitchcock*.[2]

Echoing the argument accepted by the Superior Court *en banc* in *Garcia* and *Hitchcock*, appellant contends that *Lantzy's* holding that requests for reinstatement of appellate rights premised upon counsel ineffectiveness must proceed under the PCRA cannot apply to him because *Lantzy* was not decided until after he had already requested, and been denied, *nunc pro tunc* relief in the trial court. Prior to this Court's decision in *Lantzy*, appellant notes, the Superior Court had held that restoration of appellate rights *nunc pro tunc* outside the

**2.** Since the question presented is one of law, our review is plenary. *See Commonwealth v. Hall*, 565 Pa. 92, 771 A.2d 1232, 1234 n. 2 (2001).

framework of the PCRA was available on claims such as his.[3] Appellant contends that *Lantzy* was merely intended to "clarify the procedure" by which a defendant may challenge trial counsel's stewardship in failing to appeal. Appellant does not dispute that the authoritative decision in *Lantzy* has now supplanted the Superior Court's contrary line of authority. He claims, however, that *Lantzy* announced a "new" judicial rule "of a procedural nature," which "marked a departure from Superior Court precedent," precedent which he had properly relied upon in seeking *nunc pro tunc* relief outside the PCRA. Appellant argues that such a new rule should have prospective effect only. Finally, appellant notes that, since his case is "nearly indistinguishable" from *Garcia* and *Hitchcock*, he is entitled to the same relief that the Superior Court afforded those post-conviction litigants.[4]

The Commonwealth responds that the Superior Court correctly held that in an instance such as this, the sole and exclusive avenue for post-conviction collateral review and relief in Pennsylvania is the PCRA and, thus, the trial court had no power to fashion the extra-PCRA, *nunc pro tunc* relief appellant requested. The Commonwealth argues that *Lantzy* merely interpreted the existing requirements of the PCRA, which plainly states that it is the **exclusive** means for obtaining post-conviction review. *Lantzy* thus did not break with previous judicial authority, but reaffirmed a plain meaning interpretation of the PCRA that was recognized in *Common-*

3. One of the Superior Court cases heavily relied upon by appellant was reversed after this appeal was briefed. *Commonwealth v. Hall*, 713 A.2d 650 (Pa.Super.1998), *rev'd*, 565 Pa. 92, 771 A.2d 1232 (2001). We examine the significance of *Hall* below.

4. In conjunction with his legal argument, appellant also makes factual averments to the effect that several days after sentencing, he met with plea counsel and twice requested that counsel either file an appeal or seek some type of post-conviction relief, but that counsel refused, informing appellant that there was no merit to an appeal. Appellant acknowledges that, given the posture in which we find this case, there is at present no record to support these averments and thus argues that, if the Court finds that he is entitled to pursue *nunc pro tunc* relief outside the PCRA, he be given an opportunity to substantiate his claim. For purposes of deciding the appeal, we accept that the facts are, or rather would be, as appellant represents them.

*wealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718 (1997)—which was decided well before the *nunc pro tunc* request appellant made in the case *sub judice.* The Commonwealth argues that, since the *Lantzy* "rule" was neither new nor a judicial rule of procedure, applying it here poses no legitimate question of retroactivity. In the Commonwealth's view, *Garcia, Hitchcock* and similar cases are simply wrong to the extent they perceive a question of retroactivity. Because all post-conviction remedies are subsumed within the PCRA for claims that may be raised under the PCRA, the Commonwealth reasons, the question of whether relief for such claims may be pursued outside the PCRA's framework is not one of procedure, but of jurisdiction. Since the courts below lacked authority to devise alternate avenues of post-conviction review for the claim at issue here, the Commonwealth concludes, the denial of extra-PCRA review to appellant must be affirmed.

■ We agree with the Commonwealth that *Lantzy* involved an interpretation of the plain language of the PCRA and that the statute must apply here irrespective of whether appellant sought extra-PCRA review before or after the decision in *Lantzy* was announced. Section 9542 of the PCRA, which defines its "scope," provides in pertinent part as follows:

This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. **The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis** . . . .

42 Pa.C.S. § 9542 (emphasis supplied). This provision setting forth the exclusivity of the PCRA as the means for collaterally attacking criminal convictions was enacted as part of the original PCRA in 1988. Interpreting § 9542 according to its plain language, this Court has consistently, repeatedly and unequivocally recognized—both before and after *Lantzy* was decided—the exclusivity of the PCRA in the arena in which it operates. *Lantzy,* 736 A.2d at 570; *see also Commonwealth v.*

*Hall*, 565 Pa. 92, 771 A.2d 1232, 1235 (2001) (plain language of § 9542 demonstrates General Assembly's clear intent that claims that could be brought under PCRA must be brought under that Act); *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 586 (1999) (by its own language, and by judicial decisions interpreting that language, PCRA is sole means for obtaining state collateral relief for claims cognizable under PCRA); *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242, 1251 (1999) (PCRA subsumes remedy of habeas corpus with respect to remedies offered under PCRA); *Commonwealth v. Ahlborn*, 548 Pa. 544, 699 A.2d 718, 721 (1997) (PCRA "specifies that it is the *sole* means of obtaining collateral relief, and that it supercedes common law remedies") (emphasis in original). Thus, when the Court in *Lantzy* held that claims seeking restoration of appellate rights due to counsel's alleged failure to perfect a requested direct appeal are cognizable under the PCRA, and therefore are subject to the PCRA's exclusivity provision, it was not creating a new judicial rule of procedure, but instead was interpreting and applying the plain language of the statute. Moreover, the interpretation was not unprecedented, but was fully in keeping with this Court's prior interpretations of the plain language of the PCRA.

Since our decision in *Lantzy* was published, but after this case was briefed, this Court had further occasion to consider the exclusivity of the PCRA for claims seeking restoration of appellate rights premised upon the alleged ineffective assistance of counsel. In *Commonwealth v. Hall*, we reversed a Superior Court panel which had held that *nunc pro tunc* relief was available upon such a claim outside the framework of the PCRA. In reversing, this Court did precisely what appellant claims the Superior Court panel in this case erred in doing—*i.e.*, we "retroactively" applied *Lantzy* to a case where the *nunc pro tunc* request had been made before *Lantzy* was decided. Our reasoning in *Hall* was as follows:

Appellee, like the defendant in *Lantzy*, sought restoration of his direct appeal rights *nunc pro tunc* premised upon his trial counsel's alleged ineffectiveness. Since such a claim is

cognizable under the PCRA, as we held as a matter of statutory interpretation in *Lantzy,* the trial court had no residual common law or statutory authority to entertain the claim except under the strictures of the PCRA.

771 A.2d at 1236. We note that, although Hall "applied" *Lantzy* to a case that arose before the decision was announced, no claim was forwarded in Hall that such an application of *Lantzy* would be unlawfully retroactive, nor did this Court *sua sponte* speak to the then-extant holdings in *Garcia* and *Hitchcock* that *Lantzy* should not be applied retroactively.

■ The question of *Lantzy* retroactivity is squarely joined in this case and, for the reasons that follow, we hold that application of *Lantzy* to petitioners who sought *nunc pro tunc* relief before that case was decided does not operate in an unlawfully retroactive fashion. Essential to appellant's argument on retroactivity is his claim that the decision in *Lantzy* represented a change in the law, *i.e.,* that the case fashioned a new "rule" of procedure. In holding that *Lantzy* could not apply retroactively, the Superior Court in *Hitchcock* and *Garcia* took a similar approach, as it cited to cases which examined the retroactive effect of judicial decisions announcing rules governing the conduct of criminal proceedings,[5] and characterized *Lantzy* as just such a decision which "overruled prior caselaw and announced a new principle of law." *Hitchcock,* 749 A.2d at 937–38; *Garcia,* 749 A.2d at 931–32.

But both appellant and the Superior Court have overlooked the fact that, in deciding *Lantzy,* this Court was not fashioning a judicial rule of criminal or post-conviction procedure to decide the case. Instead, this Court construed the terms of a

5. *See, e.g., Commonwealth v. Ardestani,* 558 Pa. 191, 736 A.2d 552 (1999) (plurality opinion) (involving retroactive application of *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), which held that Article I, Section 8 of Pennsylvania Constitution prohibits police from sending informant into home of individual to electronically record conversations absent prior judicial determination of probable cause); *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983) (involving retroactive application of decision in *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981), which abrogated evidentiary rule which had permitted prosecutors to introduce prior arrests of accused on cross-examination of character witnesses).

**statute,** the PCRA. As Madame Justice Newman noted in her recent unanimous opinion in *Fiore v. White,* 562 Pa. 634, 757 A.2d 842, 847 (2000), "[n]ot every opinion creates a new rule of law." This is particularly so when the opinion involves the construction of a statute, and it either adopts a view of the statute "which was not wholly without precedent," *id.; see also McCloskey v. WCAB,* 501 Pa. 93, 460 A.2d 237, 239 n. 3 (1983) (decisions that do not "articulate a new rule but merely rel[y] upon a statutory interpretation which [is] not wholly without precedent, ... are treated as relating back to the original statute because they are nothing more than interpretations of existing legislation"), or it involves this Court's first opportunity to construe the disputed provision. *Fiore,* 757 A.2d at 848. With respect to the latter circumstance, which was the circumstance facing the Court in *Lantzy,* the *Fiore* Court noted:

There can be no change to statutory law when there has been no amendment by the legislature and no prior decision by this Court. Only the legislature has the authority to promulgate legislation. Our role is to interpret statutes as enacted by the [General] Assembly. We affect legislation when we affirm, alter, or overrule our prior decisions concerning a statute or when we declare it null and void, as unconstitutional. Therefore, when we have not yet answered a specific question about the meaning of a statute, our initial interpretation does not announce a new rule of law. Our first pronouncement on the substance of a statutory provision is purely a clarification of existing law.

*Id. See also Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 312–13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) ("judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."); *Buradus v. General Cement Prods. Co.,* 356 Pa. 349, 52 A.2d 205, 208 (1947) ("[i]n general, the construction placed upon a statute by the courts becomes a part of the act, *from the very beginning*") (emphasis in original).

Although our authoritative interpretation of the PCRA in *Lantzy* differed from the intermediate appellate court's view on the question of the cognizability of claims seeking reinstatement of direct appellate rights premised upon counsel ineffectiveness, our holding in *Lantzy* did not overrule, modify, or limit any previous case **from this Court** on the question. Moreover, the decision in *Lantzy* was premised, at least in part, upon this Court's previous plain meaning construction of the exclusivity language in § 9542, a construction that factored strongly into the ultimate holding. As in *Fiore*, our interpretation of the statute as to PCRA cognizability and exclusivity constitutes its meaning from its inception. As such, it is apparent that the construction of the PCRA in *Lantzy* applies to appellant's case, and there can be no legitimate complaint that application of *Lantzy* is unlawfully retroactive. To the extent *Hitchcock; Garcia*, and other decisions of the Superior Court hold otherwise, they are hereby disapproved.[6]

We turn now to appellant's equitable argument that he allegedly relied upon the Superior Court's pre-*Lantzy* decisional law when he sought restoration of his appellate rights *nunc pro tunc* outside the framework of the PCRA, and that he should not be "penalized" for that reliance.[7] Appellant's equitable argument echoes that accepted by the Superior Court *en banc* that it would be "unjust" to apply *Lantzy* to post-conviction petitioners who allegedly relied upon that court's pre-*Lantzy* authority. *See Hitchcock*, 749 A.2d at 939; *Garcia*, 749 A.2d at 933. The injustice perceived by the

**6.** To the extent that appellant relies upon *Commonwealth v. Stock*, 545 Pa. 13, 679 A.2d 760 (1996), as authority to seek *nunc pro tunc* relief outside the framework of the PCRA in this non-summary criminal case, we note that that argument was explicitly rejected in *Hall. See* 771 A.2d at 1236–37.

**7.** In support of his assertion that he relied upon the Superior Court decisions, appellant points to the cases he cited in his Superior Court Brief. The Commonwealth disputes whether appellant filed his motion for *nunc pro tunc* relief when he did, and in the form he did, in reliance upon the Superior Court's pre-*Lantzy* decisions, noting that those decisions were never mentioned in appellant's *pro se*, non-PCRA filings in the trial court. For purposes of this appeal, we will assume that appellant sought *nunc pro tunc* relief by motion in reliance upon the then-extant Superior Court decisional authority.

Superior Court arises from the fact that a petitioner who sought relief outside the framework of the PCRA may be time-barred from invoking that Act, since the PCRA requires that all petitions be filed within one year of the date the judgment became final, unless one of three narrow exceptions applies. *See* 42 Pa.C.S. § 9545(b)(1)(i)–(iii).

This perceived injustice cannot warrant the judicial creation of an extra-PCRA remedy for claims exclusively reserved by the statute. The PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act. In this regard, we note that this Court already has held that the PCRA's time restrictions are not subject to equitable tolling. *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 590 n. 5 (2000); *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 222–23 (1999). Moreover, as the Commonwealth notes, the decisions upon which appellant allegedly relied were not from this Court, and the pre-*Lantzy* legal landscape included *Ahlborn,* a controlling decision from this Court, and the language of § 9542 itself, both recognizing the exclusivity of the PCRA. There was nothing to prevent petitioner from filing both a PCRA petition and a non-PCRA petition, or from seeking alternative forms of review, so as to protect his rights under the PCRA, in light of this Court's pronouncement on PCRA exclusivity, as well as the fact that this Court had not yet spoken on the specific question presented in *Lantzy.*

Furthermore, the potential injustice perceived by the Superior Court is much narrower than asserted. *Lantzy* decided whether the underlying **substantive** claim here—*i.e.,* that appellant was denied his right to direct appeal as a result of the ineffective assistance of his plea counsel—was one that was cognizable under, and exclusive to, the PCRA. *Lantzy's* determination that such claims sound exclusively under the PCRA does not inherently aggrieve any post-conviction petitioner. Indeed, given the courts' liberal construction of *pro se* pleadings, including pleadings under the PCRA, *see* Pa. R.Crim.P. 905 (governing amendment of PCRA petitions), a non-PCRA petition filed within one year of the judgment

becoming final could and should be treated as one sounding under the PCRA, and appropriate amendment permitted. *See, e.g., Commonwealth v. Weimer,* 756 A.2d 684, 685–86 (Pa.Super.2000) (Eakin, J.), *allocatur denied,* 564 Pa. 695, 764 A.2d 50 (2000) (*pro se* post-conviction petitions couched in terms of habeas corpus, illegality of sentence, and reinstatement of appellate rights would be treated as PCRA petition since they sought relief that was available under PCRA) (collecting cases).

■ The circumstance that aggrieves appellant arises not from his alleged reliance upon Superior Court decisions leading him to employ an incorrect form or title for his collateral action—*i.e.,* seeking *nunc pro tunc* relief via a non-PCRA filing rather than via a PCRA petition—but from his **tardiness** in initiating any collateral attack at all. Appellant did not seek collateral relief in the form of an appeal *nunc pro tunc* until more than one year after his judgment of sentence became final. At that point, any petition he filed under the PCRA would have been time-barred, unless he could prove an exception to the time-bar. Thus, appellant's present request for "equitable" relief seeks an unintended benefit that was, at best, collateral to the Superior Court's pre-*Lantzy* holding that this type of claim was not cognizable under the PCRA: the benefit of not being subject to the PCRA's period of limitations.[8] Even if the PCRA authorized this Court to recognize equitable exceptions to its period of limitations, we would not be inclined to fashion one under such circumstances. Appellant could have preserved his claim simply by invoking the lower court's jurisdiction within one year of final judg-

---

**8.** Notably, the Superior Court decisions holding that claims seeking restoration of appellate rights *nunc pro tunc* are not cognizable under the PCRA did not themselves suggest that such extra-PCRA motions could be brought at any time, irrespective of the PCRA time limitation. *See Commonwealth v. Hall,* 713 A.2d 650 (Pa.Super.1998), *rev'd,* 565 Pa. 92, 771 A.2d 1232 (2001); *Commonwealth v. Lantzy,* 712 A.2d 288 (Pa.Super.1998), *rev'd,* 558 Pa. 214, 736 A.2d 564 (1999); *Commonwealth v. Petroski,* 695 A.2d 844 (Pa.Super.1997). It is equally notable that appellant does not claim that he relied upon the pre-*Lantzy* cases in allowing the PCRA period of limitations to expire.

ment. His failure to do so results in the unreviewability of his claim under the PCRA's time-bar.

For the foregoing reasons, we hold that the Superior Court properly applied this Court's decision in *Commonwealth v. Lantzy.* Accordingly, we affirm.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Chief Justice ZAPPALA concurs in the result.

Justice NIGRO files a concurring and dissenting opinion.

Justice NIGRO, concurring and dissenting.

I agree with the majority that Appellant is not entitled to reinstatement of his appellate rights *nunc pro tunc* outside of the framework of the PCRA. However, as expressed in my concurring opinion in *Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232 (2001), I would grant equitable relief when the facts establish that the defendant reasonably relied in good faith upon his attorney to perfect his appellate rights. Thus, I must dissent from the majority's application of a *per se* rule forbidding *nunc pro tunc* relief outside of the framework of the PCRA under all circumstances.

In *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564, 570 (1999), this Court made clear that the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal. The Court further concluded that where there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases, denies the accused his constitutional rights to assistance of counsel and to direct appeal, and constitutes prejudice for purposes of 42 Pa.C.S. § 9543(a)(2)(ii). *Lantzy,* 736 A.2d at 572. Thus, in such circumstances, and where the remaining requirements of the PCRA are satisfied, a petitioner establishes ineffectiveness of counsel, and the remedy for the deprivation of the fundamental right of direct appeal is its restoration. *See id.* at 572–73.

Subsequent to our decision in *Lantzy,* we granted allocatur in *Commonwealth v. Hall* to determine whether Hall, who failed to file a direct appeal and subsequently filed an untimely PCRA petition to restore his waived direct appeal, could obtain reinstatement of his direct appeal rights *nunc pro tunc* outside of the PCRA. Citing the plain language of the PCRA and our decision in *Lantzy,* the Court concluded that Hall's request for a direct appeal *nunc pro tunc* premised on counsel's alleged ineffectiveness for failing to file a direct appeal was a claim that unquestionably was available to him under the PCRA. *Hall,* 771 A.2d at 1235–36. However, because Hall had not raised this claim in a timely PCRA petition, we reversed the trial court's order granting leave to file an appeal *nunc pro tunc. Id.* at 1236.

I filed a concurring opinion in *Hall,* concluding that while I agreed with the majority that Hall was not entitled to relief under the facts of his case, I would have required a different result had the facts established that Hall reasonably relied in good faith upon counsel to protect his appellate rights. My explanation for this conclusion in *Hall* accurately expressed my continuing sentiments:

> I am troubled by the prospect that a defendant who, for example, instructed counsel to file a direct appeal, was told by counsel that an appeal was being filed, was subsequently reassured by counsel that the appeal was filed, but later found out after the one-year limitation period expired that counsel never filed the appeal, is forever precluded from receiving at least one appellate review of his case. In my view, a rule that penalizes a defendant who reasonably relies in good faith upon his counsel to protect his appellate rights is contrary to the purpose of the PCRA, and such a defendant should be entitled to, at a bare minimum, one appellate review.

*Id.* at 1237 (Nigro, J., concurring).

Just as I did not join the bright-line approach adopted by the majority in *Hall,* I cannot endorse the application of that *per se* rule in the instant case. However, I agree with the majority's ultimate conclusion here because, like the defendant

in *Hall,* Appellant failed to establish that he reasonably relied in good faith upon his attorney to protect his appellate rights and therefore is not, in my view, entitled to *nunc pro tunc* relief. Although Appellant asked counsel to file an appeal, there is simply no evidence that counsel agreed to file an appeal on Appellant's behalf, or that he subsequently reassured Appellant that he would file an appeal or take any action on Appellant's behalf. In fact, counsel specifically informed Appellant that he would not file an appeal because he could not identify any meritorious issues. Accordingly, I concur in the result reached by the majority in the instant case.