**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kevin JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 14, 2003.

Filed Dec. 26, 2003.

David J. Foster, Lemoyne, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: BENDER, OLSZEWSKI, and BECK, JJ.

OLSZEWSKI, J.

¶ 1 Kevin Johnson (appellant) appeals from an order of the trial court, dated March 17, 2003, which dismissed his petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § § 9541–9546.

¶ 2 On September 25, 1991, a jury found appellant guilty of murder in the first degree and possession of an instrument of crime. This Court affirmed appellant's conviction and sentence on August 17, 1993. *Commonwealth v. Johnson*, 432 Pa.Super. 686, 635 A.2d 203 (Pa.Super.1993). The Supreme Court denied *allocatur* review on May 9, 1994. *Commonwealth v. Johnson*, 538 Pa. 621, 646 A.2d 1176 (Pa.1994).

¶ 3 Appellant filed a timely PCRA petition in the Philadelphia Court of Common Pleas on January 16, 1997. Judge O'Keefe

dismissed the petition on November 17, 1997. Appellant claims that he filed a *pro se* appeal from the denial of his petition on December 8, 1997, but there is no indication of this appeal in the record.

¶ 4 On March 29, 2000, appellant filed a petition *nunc pro tunc* for reinstatement of his PCRA appellate rights. Appellant's appointed counsel petitioned the court to withdraw, claiming that appellant had no meritorious claims. Judge O'Keefe agreed, and on February 26, 2001, he sent appellant a notice of intent to dismiss the petition pursuant to Pa.R.Crim.P. 907. Judge O'Keefe did not receive a response from appellant and dismissed the petition as "frivolous" on April 24, 2001. Appellant did not appeal. He claims that he never received the notice to dismiss because it was erroneously sent to SCI Green instead of SCI Mahanoy, where he was incarcerated.

¶ 5 Appellant next filed a "Motion for Leave to File Response *Nunc Pro Tunc* to Notice to Dismiss PCRA Petition Without a Hearing" on December 11, 2001. On January 29, 2002, Judge O'Keefe vacated his April 24, 2001 order, in which he dismissed appellant's March 29, 2000 petition, and he permitted appellant to file a response *nunc pro tunc* to the February 26, 2001 notice of intent to dismiss. The Commonwealth filed a motion to dismiss appellant's *nunc pro tunc* response, arguing that it should be treated as an untimely third PCRA petition. Appellant responded, asking for a full evidentiary hearing and leave to amend its March 29, 2000 petition to include an after discovered evidence claim. Judge O'Keefe dismissed appellant's claims on March 17, 2003. This appeal followed.

¶ 6 Appellant raises the following three issues on appeal:

A. Whether the PCRA court erred in refusing to hold an evidentiary hearing and reinstate Appellant's appellate rights as to his first PCRA petition based on a "breakdown of court operations" and the ineffectiveness of counsel, who failed to litigate the appeal despite appellant's wishes, failed to advise him of his appellate rights, failed to advise him of his right to counsel for the appeal, and failed to assist him in obtaining the appointment of appellate counsel?

B. Whether the PCRA court erred in refusing to hold an evidentiary hearing on appellant's second pro se PCRA petition and grant him relief on the issues of whether trial counsel was ineffective for failing to object to the Commonwealth's intentional, prejudicial injection of gang-related references as to appellant; whether appellant has a viable *Batson* claim; whether counsel was ineffective for failing to call a critical defense witness; and whether the post-trial perjury conviction of an important police witness should warrant a new trial?

C. Whether the PCRA court erred in refusing to permit appellant to amend his second pro se PCRA petition and hold a hearing on the recantation of the critical Commonwealth eyewitness to the murder, who at trial testified that appellant and the decedent were shooting at each other and who now has stated in a sworn affidavit that he does not know whether appellant was one of the individuals who shot the victim, which constitutes newly-discovered evidence and the only way the court could determine whether the recantation is credible is to hear it?

¶ 7 Before this Court will consider appellant's claims, we must first decide

whether the PCRA court had jurisdiction to hear appellant's March 29, 2000 petition and appellant's plea for *nunc pro tunc* relief. We find that the PCRA court did not have jurisdiction to hear appellant's claims because they were untimely filed and did not qualify for any timeliness exception under the PCRA.

▇ ¶ 8 A petitioner must file a PCRA petition within one year of the date that his or her judgment becomes final. This includes second and subsequent petitions. 42 Pa.C.S.A. § 9545(b)(1). "A judgment of sentence becomes final once an appellant's means of direct review of a conviction, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, have concluded or the time limits for seeking a direct appeal have expired." *Commonwealth v. Tedford,* 566 Pa. 457, 781 A.2d 1167, 1170–71 (2001) (*citing* 42 Pa.C.S.A. § 9545(b)(3)). Pursuant to the 1995 amendments to the PCRA, if judgment of sentence became final before January 16, 1996, (the effective date of the amendments) then a petitioner had until January 16, 1997, to file his or her PCRA petitions. *See Commonwealth v. Fairiror,* 809 A.2d 396, 398 (Pa.Super.2002). The only exceptions to the one-year filing requirement involve governmental interference, after-discovered facts or evidence, and an after-recognized constitutional right. 42 Pa. C.S.A. § 9545(b)(1)(i)(ii)(iii). If any of these exceptions apply, a petitioner must assert them within sixty days of the date that the exception could be asserted. 42 Pa.C.S.A. § 9545(b)(2).

¶ 9 Appellant's judgment became final before the effective date of the PCRA amendments, but, pursuant to the statute, he filed a timely PCRA petition on January 16, 1997. As stated above, the PCRA court dismissed this petition on November 17, 1997.

¶ 10 Appellant's second petition, which he filed *nunc pro tunc* on March 29, 2000, was not timely. In that petition, appellant sought reinstatement of his appellate rights to the dismissal of his first PCRA petition. He claimed that he mailed a *pro se* appeal to the prothonotary's office, but it was never docketed. In this appeal, he further claims that "there is the suggestion that [counsel], contrary to Appellant's express instructions and desire, failed to litigate the appeal . . . ." Appellant's Brief, at 9.

▇ ¶ 11 The March 29, 2000 petition must be considered a PCRA petition, as the PCRA is the only means for restoring direct appeal rights. *Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232, 1235 (2001). In *Commonwealth v. Lantzy,* the Supreme Court found that the PCRA "provides the exclusive remedy for post-convictions claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal." 558 Pa. 214, 736 A.2d 564, 569–70 (1999). Accordingly, such claims, including second and subsequent petitions, are subject to the PCRA's one-year timeliness requirement. Clearly, appellant filed his second petition three years too late.

▇ ¶ 12 Appellant argues, however, that his second petition was actually an "extension" of his first, timely-filed PCRA petition. Essentially, appellant claims that he was unfairly denied his right to appeal because his counsel was ineffective. This argument has no merit.

¶ 13 In *Hall,* our Supreme Court found that a petitioner's claim that his counsel was ineffective for failing to initiate a direct appeal can only be reviewed under the PCRA, and therefore, must be filed within the PCRA's one-year timing requirement. *Hall,* 771 A.2d at 1235–36. Moreover, in *Commonwealth v. Eller,* our Supreme

Court found that a petitioner's untimely petition seeking the reinstatement of appellate rights must be dismissed as untimely even when his lawyer failed to file a direct appeal at the petitioner's request. *Eller*, 569 Pa. 622, 807 A.2d 838 (2002); *see also Fairiror*, 809 A.2d at 397 (finding "that all requests for reinstatement of appellate rights, including PCRA appellate rights, must meet the timeliness requirement of the PCRA."); *but see Commonwealth v. Ceo*, 812 A.2d 1263 (Pa.Super.2002). The *Eller* court exclaimed that "[t]he PCRA confers no authority upon [the Supreme] Court to fashion *ad. hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act."

¶ 14 In *Commonwealth v. Robinson*, 575 Pa. 500, 837 A.2d 1157 (2003), our Supreme Court reinforced the principles it stated in *Eller*. In *Robinson*, a petitioner filed a second, untimely PCRA petition in the form of a *nunc pro tunc* appeal asking this Superior Court to reinstate his appellate rights because his counsel failed to file an appellate brief when he appealed his first PCRA petition. *Robinson* at 1159. Because of this "administrative breakdown," we treated the untimely petition as an "extension" of the petitioner's first, timely filed PCRA petition. *Robinson* at 1159. The Supreme Court, however, found our "extension" theory to be fiction and reversed. *Id.* at 1162. It held that the "extension" theory is not one of the three exceptions to the time-bar requirements in the PCRA, and therefore, it cannot be

used as an end run around the PCRA *Id.* at 1161–62.

¶ 15 As the Supreme Court stated in *Eller*, and then again in *Robinson*, we do not have authority to create *ad hoc* equitable exceptions to the PCRA time-bar rule. Therefore, we cannot consider appellant's March 29, 2000 petition as an extension of his first petition in order to circumvent the PCRA.

¶ 16 Consequently, because appellant's second PCRA petition was not timely, appellant's "Motion for Leave to File Response *Nunc Pro Tunc* to Notice to Dismiss PCRA Petition Without a Hearing," which he filed on December 11, 2001, is also untimely inasmuch as it relates to the PCRA court's dismissal of his second PCRA petition on April 24, 2001.[1]

¶ 17 Finally, appellant argues that the PCRA court erred when it refused to hold a hearing on the recanted testimony of Ernest Herwig, an eyewitness to the murder. We will review the PCRA court's order only to determine whether it is supported by sufficient evidence on the record and whether it is free of legal error. *Commonwealth v. Cobbs*, 759 A.2d 932, 934 (Pa.Super.2000) (citations omitted). We will not disturb the order absent a clear abuse of discretion. *Commonwealth v. Henry*, 550 Pa. 346, 706 A.2d 313, 321 (1997).

¶ 18 In order to sustain an untimely PCRA petition under the after-discovered evidence exception, a petitioner must show that the evidence: (1) has been

---

1. Even if appellant's petitions could be considered timely, appellant has no absolute right to a hearing under the PCRA. *Commonwealth v. Camps*, 772 A.2d 70, 75 (Pa.Super.2001) (citations omitted). According to Pa. R.Crim.P. 907, "[a] petition for post-conviction relief may be denied without a hearing when the court determines that there are no genuine issues concerning any material fact, and that the petitioner is not entitled to relief." *Id.* We may safely assume that the PCRA court found no genuine issues of material fact and that appellant was not entitled to relief when Judge O'Keefe dismissed his second petition as "frivolous."

discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted. *Id.* (*citing Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978)).

¶ 19 Appellant has not met the criteria for after-discovered evidence. First, the record shows that Mr. Herwig was not the only eyewitness to the murder. Police Officer Murray Workman saw appellant shoot the victim three times, after which he chased appellant and eventually detained him. Ballistics also matched the bullets recovered from the decedent and determined they were fired from the same type of gun that appellant had in his possession the night of the murder. Moreover, Judge O'Keefe recognized that recantation testimony is extremely unreliable. *See Henry*, 706 A.2d at 321 (*citing Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541 (1995); *Commonwealth v. Nelson*, 484 Pa. 11, 398 A.2d 636 (1979); *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970)). He further noted that "[w]hen the recantation involves an admission of perjury, it is the least reliable form of proof." *Id.* (citations omitted). Given these facts, appellant's proffered testimony is not of such a nature and character that a different verdict will likely result if a new trial is granted. Additionally, as stated above, a PCRA petitioner does not have an absolute right to an evidentiary hearing. Accordingly, Judge O'Keefe did not abuse his discretion when he dismissed appellant's petition.

¶ 20 Therefore, we reinstate the trial court's April 24, 2001 order dismissing appellant's second PCRA petition. The petition was untimely. Further, we vacate the trial court's March 17, 2003 order because the trial court did not have jurisdiction over the matter.

¶ 21 Order vacated. Jurisdiction relinquished.