

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-14-2004

# Schlueter v. Varner

Precedential or Non-Precedential: Precedential

Docket No. 03-3928

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Schlueter v. Varner" (2004). *2004 Decisions.* Paper 280.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/280

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3928
_____

PAUL GEORGE SCHLUETER, III,

Appellant

v.

BENJAMIN VARNER; DISTRICT
ATTORNEY NORTHAMPTON
COUNTY;
ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA
_____

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Civil No. 00-cv-05179)
District Judge:
Honorable Anita B. Brody
_____

Argued June 25, 2004

Before: AMBRO, BECKER, and
GREENBERG, Circuit Judges.

(Filed: September 14, 2004)
_____

Michael M. Mustokoff
Stephen A. Mallozzi (argued)
Cindy D. Hinkle

Duane Morris LLP
1650 Market Street
One Liberty Place, 37th Floor
Philadelphia, PA 19103-7396

Attorneys for Appellant

John M. Morganelli (argued)
District Attorney
Northampton County Government
Center
669 Washington Street
Easton, PA 18042

Attorney for Appellees
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

Paul George Schlueter, III, is a
Pennsylvania inmate serving a sentence
of life in prison for first degree murder.
He appeals from an order of the district
court entered September 3, 2003,
dismissing his petition for a writ of
habeas corpus on the ground that the
applicable one-year period of limitation
barred the petition. For the reasons that
follow, we will affirm the district court's
order.

I. BACKGROUND

In 1985, Schlueter was arrested
and charged in Northampton County,
Pennsylvania, with the criminal
homicide of Carol Ann Bonney. The

Northampton County Public defender's office assigned part-time public defenders George Blasco and Lorenzo Crowe to represent Schlueter and the district attorney assigned James Narlesky, a part-time assistant district attorney to prosecute the case. Relying on his attorneys' advice, Schlueter entered a plea of nolo contendere to a charge of open degree homicide.[1] The trial court subsequently conducted a hearing to determine Schlueter's degree of guilt at which Schlueter presented a diminished capacity defense based on his level of intoxication and drug use on the night of the homicide. The trial court found Schlueter guilty of murder in the first degree and sentenced him to life in prison on May 5, 1987.

Following his conviction, Schlueter met with his attorneys to discuss whether to pursue a direct appeal. Blasco and Crowe advised Schlueter that he would be eligible for parole in approximately 20 years[2] and

that there were no appealable issues that could reduce his degree of guilt. Accordingly, Schlueter decided to forego a direct appeal. Blasco died about one year later on May 26, 1988. Schlueter contends that his attorneys' parole advice was erroneous as he never will be eligible for parole. Apparently in part because of having found out his actual parole situation, on August 16, 1988, Schlueter contacted Crowe requesting information for the purpose of pursuing state post-conviction review. Crowe, however, did not respond to Schlueter's

---

In a letter to Crowe dated August 16, 1988, Schlueter stated that he was advised that he would be eligible for parole in 20 years. Crowe, however, stated in an affidavit in 1998 that Blasco informed Schlueter that he would be eligible for parole in 15 years. On the other hand, Schlueter stated in an affidavit in 1998 that Blasco informed him that he would be eligible for parole after 14 years. In denying Schlueter's petition for post-conviction relief, the trial court found as a fact that Schlueter was advised that he would be eligible for parole after serving 20 years. See Commonwealth v. Schlueter, No. 0201-1986 at 2 (Northampton County, Pa. Ct. Com. Pl., Crim. Div., Dec. 30, 1998, app. at 415). Schlueter indicates in his brief on this appeal that "[f]or purposes of these habeas proceedings, the term of eligibility is irrelevant since [he] was and is never eligible for parole." Appellant's br. at 12.

---

[1] Schlueter earlier had pleaded nolo contendere when represented by different attorneys from the public defender's office but with the court's permission had withdrawn that plea. Consequently, we are concerned with events following his second nolo contendere plea.

[2] Schlueter correctly acknowledges that the record contains conflicting information regarding the parole advice he received. Appellant's br. at 12 n.11.

2

request.

Meanwhile, in March 1988, the victim's family initiated a wrongful death action against Schlueter, who initially represented himself in the civil proceedings. Based on Schlueter's criminal conviction, the trial court entered a directed verdict against him. In June 1994 Schlueter's parents retained attorney Philip Lauer of Easton, Northampton County, to represent their son in his civil appeal from the judgment against him and to explore possible challenges to his conviction under Pennsylvania's Post Conviction Relief Act ("PCRA"). Lauer advised Schlueter to postpone pursuing PCRA remedies until the conclusion of the civil proceedings. The Superior Court affirmed the judgment against Schlueter on his civil appeal and his civil appellate proceedings were terminated unsuccessfully when the Pennsylvania Supreme Court denied his petition for allowance of appeal on November 28, 1994.

Two years later, prior to Schlueter filing a PCRA petition, he and his parents learned that the Pennsylvania legislature had amended the PCRA to prescribe a filing deadline of January 16, 1997, in older cases such as Schlueter's.[3]

---

[3]See Commonwealth v. Fenati, 748 A.2d 205, 207 (Pa. 2000) (holding that PCRA petition filed on January 16, 1997, was timely filed within one year of

By letter dated November 10, 1996, Schlueter informed Lauer of the deadline and asked him to file a timely PCRA petition. Lauer replied by letter dated December 2, 1996, that he was "well aware" of the deadline and would file a petition "before year's end." App. at 783. By letter dated December 13, 1996, Lauer also informed Schlueter's parents that he was anticipating filing a PCRA petition "prior to the end of this year." App. at 790. Nevertheless, Lauer did not file a PCRA petition and did not communicate further with Schlueter or his parents. On March 18, 1997, the Clerk of the Northampton County Court of Common Pleas advised Schlueter in response to his inquiry that no one had filed a PCRA petition on his behalf.

On May 27, 1997, the Schlueters retained his current attorneys' law firm to explore the possibility of filing a PCRA petition. After repeated attempts, the new attorneys retrieved Schlueter's files from Lauer on October 2, 1997. Upon reviewing the files, they discovered that they did not include certain files from the Public Defender's Office. At Schlueter's new attorneys' request, the Public Defender's Office located Schlueter's files and arranged for them to review the files and to interview Crowe on December 9, 1997. During the interview with Crowe, they learned that George Blasco and Assistant District

---

the PCRA amendments effective January 16, 1996).

3

Attorney Narlesky had been "civil law partners" in Easton prior to Blasco's death.[4]

Relying on this information, his attorneys filed a PCRA petition on Schlueter's behalf on February 2, 1998, alleging a conflict of interest arising from the Blasco/Narlesky civil law practice. Recognizing the apparent untimeliness of their PCRA petition, they attempted to invoke a statutory exception to the PCRA's period of limitation by arguing that the facts of the Blasco/Narlesky arrangement had been unknown and could not have been ascertained through the exercise of due diligence.[5] They subsequently reviewed court records and filings and learned that Blasco and Narlesky practiced and shared fees in civil cases, together owned and shared their office space, and shared operating expenses and personnel.

On June 22, 1998, more than 11 years after he was convicted and while his PCRA petition was pending, Schlueter filed a motion seeking restoration of his appellate rights nunc

pro tunc, arguing that the court should restore his right to a direct appeal due to his trial attorneys' erroneous parole advice. After conducting a hearing, the PCRA court dismissed the PCRA petition as untimely and, in the same opinion, denied Schlueter's motion to restore his right to appeal nunc pro tunc because Schlueter had "knowingly and voluntarily waived his appellate rights." App. at 436. On appeal, the Pennsylvania Superior Court affirmed the dismissal of Schlueter's PCRA petition as untimely without mentioning his motion to restore his right to file a direct appeal from his conviction nunc pro tunc.[6] The Pennsylvania Supreme Court denied Schlueter's petition for allowance of appeal without explanation on August 28, 2000.

Through his attorneys, Schlueter filed a federal habeas corpus petition in the district court on October 12, 2000.[7]

---

[4]The respondents deny that Blasco and Narlesky were partners and state they merely were part of an office sharing arrangement. For purposes of this appeal we will assume that they were partners.

[5]See 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii) (West 1998).

[6]Of course, the judgment of affirmance upheld the denial of the motion to appeal nunc pro tunc.

[7]In his federal habeas corpus petition, Schlueter articulated the following claims for relief: (1) his plea was involuntary and unintelligent due to an actual conflict of interest between Blasco and Narlesky; (2) his trial attorneys' erroneous parole advice denied him the right to file a direct appeal; (3) his trial attorneys rendered ineffective assistance due to the conflict of interest between Blasco and Narlesky;

The respondents moved to dismiss the habeas petition as barred by the applicable one-year period of limitation. The case was referred to the chief magistrate judge who rejected Schlueter's arguments for equitable and statutory tolling, and recommended dismissing the habeas petition as untimely. After hearing oral argument, the district court adopted the chief magistrate judge's report and recommendation and dismissed Schlueter's habeas petition as untimely. The court, however, granted a certificate of appealability on the issue of equitable tolling. The district court subsequently "amplified" the certificate of appealability to include the statutory tolling issues as well.

Schlueter has filed a timely appeal.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The district court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254 and our jurisdiction is based on 28 U.S.C. §§ 1291 and 2253. We exercise plenary review over the district court's order dismissing Schlueter's habeas petition as time barred. See Douglas v. Horn, 359 F.3d 257, 259 (3d Cir. 2004).

### B. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") Congress prescribed a one-year period of limitation for the filing of federal habeas corpus petitions by state prisoners. See Douglas, 359 F.3d at 261. Effective April 24, 1996, the AEDPA provides in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
>
> . . . .
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the

and (4) the Pennsylvania courts denied his right to due process by refusing to allow him to present evidence supporting the merits of his conflict of interest claim.

5

exercise of due diligence.

28 U.S.C. § 2244(d)(1).[8]

We first determine the date on which the one-year period began running. Ordinarily under section 2244(d)(1)(A), Schlueter's one-year period of limitation would have begun running on April 24, 1996, because his conviction became final well before the effective date of the AEDPA. See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998) (allowing a one-year grace period to petitioners whose convictions became final prior to the enactment of the AEDPA). Schlueter asserts, however, that the one-year period began running under section 2244(d)(1)(D) on December 9, 1997, the date on which his current attorneys discovered the Blasco/Narlesky arrangement. Appellant's br. at 51-53.

By its language, the one-year period of limitation commences under section 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. Moore v. Knight, 368

F.3d 936, 940 (7th Cir. 2004) (quoting Wims v. United States, 225 F.3d 186, 190 n.4 (2d Cir. 2000)). Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only "if vital facts could not have been known." Owens, 235 F.3d at 359.

We are convinced that if Schlueter had exercised due diligence, he could have discovered the Blasco/Narlesky arrangement long before the AEDPA became effective. Lauer testified at the PCRA hearing that it was common knowledge in the legal community in Northampton County that Blasco and Narlesky shared office space. Lauer also testified that he personally was aware of the arrangement when he represented Schlueter in 1994. Indeed, in our view, it is inconceivable that Blasco and Narlesky could have hidden their arrangement from the relatively small legal community or the public in Northampton County.[9]

---

[8]The omitted subsections are not germane in this case.

[9]We are not suggesting that they attempted to hide their arrangement or believed that they had any reason to do so during the time of their association. Nevertheless, it must be acknowledged that not every attorney in Northampton County was aware of the depth and circumstances of the Blasco/Narlesky arrangement as Crowe indicated to Schlueter's current attorneys that he was not.

6

Moreover, Schlueter's current attorneys learned of the arrangement simply by interviewing Crowe who, with Blasco, represented Schlueter in the criminal proceedings. Certainly, if he had exercised due diligence, Schlueter would have had Crowe interviewed many years before December 9, 1997, as it is apparent in view of his incarceration that Schlueter had every incentive to have Crowe, his surviving trial attorney, interviewed. After all, as early as August 16, 1988, he had written Crowe requesting information for the purpose of pursuing state post-conviction review. We also point out that the factual basis for the claim of impropriety based on the Blasco/Narlesky arrangement was hardly obscure for, after interviewing Crowe and discovering the Blasco/Narlesky arrangement, Schlueter's current attorneys learned the details of the arrangement merely by reviewing court records and filings, all of which were matters of public record. Appellant's br. at 24.

We realize that Lauer advised Schlueter to postpone pursuing PCRA review until the civil proceedings were concluded. But by the time that his parents retained Lauer almost six years had elapsed since the time that Schlueter first contemplated bringing post-conviction review proceedings. Clearly, in allowing this time to pass Schlueter was not diligent. Moreover, Lauer's advice, at most, could have delayed Schlueter for only about five months from Lauer's retention in June 1994 until

November 28, 1994, when the Pennsylvania Supreme Court refused to allow him to appeal.

Overall, we are satisfied that through the exercise of due diligence, Schlueter could have learned the factual predicate of his conflict of interest claim well before April 24, 1996. Therefore, the one-year period of limitation began running under section 2244(d)(1)(A) on April 24, 1996. Inasmuch as Schlueter filed his federal habeas corpus petition four and one-half years later on October 12, 2000, in the absence of tolling of the one-year period of limitation, his habeas corpus petition was untimely.

In reaching our result, we recognize that Schlueter is and has been incarcerated for many years and that physical confinement can limit a litigant's ability to exercise due diligence. See Moore v. Knight, 368 F.3d at 940. We observe from the record and references in Schlueter's brief, however, that Schlueter's parents have been involved actively in their son's case for several years. Thus, Schlueter, unlike many other incarcerated litigants, has enjoyed the benefit of his family's assistance, involvement and resources. We also point out that Schlueter's parents must be well educated as they both are referred to as "Doctor" in the record in this case. Therefore, Schlueter's incarceration does not change our view that if he had exercised due diligence he would have discovered the facts supporting his PCRA claims

7

before April 24, 1996.

## C. Tolling of the One-Year Period of Limitation

The AEDPA's one-year period of limitation is not an absolute limit. See Douglas, 359 F.3d at 261. Rather, it is subject to two possible tolling exceptions both of which Schlueter advances: (1) statutory tolling under 28 U.S.C. § 2244(d)(2) while a properly filed application for post-conviction review is pending in the state courts; and (2) equitable tolling. See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). We examine first the period of time from April 24, 1996, the date on which the one-year period began to run, through December 9, 1997, the date on which Schlueter's current attorneys discovered the Blasco/Narlesky arrangement, to determine whether there should be equitable tolling during any portion of this period.[10]

---

[10]It is undisputed that the period of time from April 24, 1996, through February 2, 1998, cannot be tolled statutorily under section 2244(d)(2) as Schlueter did not file any application of any kind in the state courts from April 24, 1996, until February 2, 1998, and he had not filed any application earlier that was pending during that period. In addition, Schlueter concedes that the one-year period was running from December 9, 1997, until February 2, 1998. Appellant's br. at 62.

The one-year period should be equitably tolled "only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). Equitable tolling is appropriate:

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims.

Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998) (internal citations and alterations omitted).

Schlueter bases his equitable tolling argument on what he characterizes as attorney malfeasance. Specifically, he argues that the delay in filing his PCRA petition (and by extension his federal habeas corpus petition) was due to Lauer's misconduct in affirmatively misrepresenting that he would file a timely PCRA petition on Schlueter's behalf. In this regard we point out that if Lauer had filed the PCRA petition by the state deadline of January 16, 1997, there would have been

8

a period of tolling under section 2244(d)(2). In addition, Schlueter contends that Blasco and Narleskys' alleged misconduct in not disclosing their arrangement compounded the unfair effect of Lauer's failure to file a PCRA petition after representing that he would do so.

Generally, in a non-capital case such as Schlueter's, attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation. See Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002). Nevertheless, we have held, albeit outside the habeas context, that there are "narrow circumstances in which the misbehavior of an attorney may merit" equitable tolling. Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999). Seitzinger involved a Title VII plaintiff who asked her attorney prior to the expiration of an applicable 90-day period of limitations if he had filed a complaint on her behalf. Id. at 238. The attorney falsely stated that he had done so whereas, in fact, he did not file a complaint until one day after the limitations period expired. Id. We held that the attorney's affirmative misrepresentation to his client, coupled with the plaintiff's extreme diligence in pursuing her claim and the absence of prejudice to the defendant, "created a situation appropriate for tolling." Id. at 242.

We find that the material facts of Seitzinger are distinguishable from those presented here. In Seitzinger, counsel misrepresented to his client that he already had filed a timely complaint and by the time the client discovered that her attorney had not done so the period of limitations had expired. Here, in December 1996, Lauer informed Schlueter and his parents that he anticipated filing a PCRA petition before the end of the year. When the year ended, Schlueter could have learned, as he did later, that Lauer had not filed a PCRA petition. If he had done so he still would have had a small window of time in which to file a pro se petition and save his PCRA claims from dismissal as untimely. Thus, his situation differs sharply from that of the Seitzinger plaintiff who was misled by what the attorney said he had done, not by what he said he would do.

Moreover, it is apparent that Schlueter was fully aware of his PCRA rights in 1994 when he retained Lauer.[11] Schlueter knew that Lauer had done little, if anything, to pursue PCRA relief for more than two years. Notwithstanding this knowledge, neither Schlueter nor his parents took

_____

[11]The record reflects that Schlueter actually knew of his right to pursue state post-conviction review as early as August 16, 1988, when he wrote to Crowe requesting information for that purpose. Crowe declined to respond because he no longer represented Schlueter. Schlueter apparently took no further steps to challenge his conviction until he retained Lauer in 1994.

9

affirmative steps to ensure the timely filing of a PCRA petition until Schlueter wrote his November 10, 1996 letter to Lauer advising him of the PCRA deadline and asking him to file a timely petition. Then after the end of 1996 Schlueter did not attempt to ascertain from Lauer prior to the January 16, 1997 deadline of which he was well aware whether Lauer, in fact, had filed a PCRA petition. We also find it significant that the period of limitations at issue in Seitzinger was a brief 90 days and that the attorney filed the complaint only one day late. Thus, the attorney's misconduct warranted equitably tolling one day of a short period of limitations. Here, the AEDPA's limitation period is one year, and did not begin to run until April 24, 1996, nearly nine years after Schlueter's conviction became final in 1987. Schlueter did not initiate state post-conviction proceedings until 1998 and did not pursue federal habeas corpus relief until 2000 even though he had been convicted in 1987. The circumstances in Schlueter's case simply do not warrant the application of equitable tolling after such lengthy periods of time had elapsed following his conviction before he sought state and federal relief.[12]

Schlueter also relies on Spitsyn v.

Moore, 345 F.3d 796 (9th Cir. 2003), and Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003), for the proposition that attorney malfeasance constitutes an extraordinary circumstance sufficient to warrant equitable tolling of the one-year period of limitation. As these cases amply demonstrate, however, a finding that attorney malfeasance is an extraordinary circumstance, without more, is not sufficient to warrant equitable tolling. Spitsyn holds that egregious attorney misconduct may justify equitable tolling, but also requires district courts to examine the petitioner's due diligence in pursuing the matter under the specific circumstances he faced. Spitsyn, 345 F.3d at 802. Likewise, Baldayaque holds that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling." Baldayaque, 338 F.3d at 152-53. Baldayaque, however, expressly states that the presence of extraordinary circumstances "is not enough" – a petitioner "must also show that he acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely." Id. at 153 (citation omitted). In other words, neither Spitsyn nor Baldayaque holds that attorney malfeasance, standing alone, warrants equitable tolling.[13]

---

[12]Inasmuch as we are not allowing any period of equitable tolling we have no need to engage in an intricate counting process computing the hypothetical possible tolling period.

---

[13]We acknowledge Schlueter's reliance on Boyd v. Myers, Civ. A. No. 97-7160, 1998 U.S. Dist. LEXIS 20253

10

For these reasons, we conclude that the circumstances presented in Schlueter's case do not warrant equitable tolling. We are convinced that if Schlueter had exercised reasonable diligence, he could have brought his claims in a timely fashion, Lauer's alleged misconduct notwithstanding.[14] Accordingly, we cannot equitably toll the period of time from April 24, 1996, until December 9, 1997, or during any portion thereof. We conclude, therefore, that the AEDPA's one-year period of limitation expired before Schlueter filed his PCRA petition, his motion to reinstate his direct appeal nunc pro tunc, or his federal habeas corpus petition.[15]

In view of our disposition we address only briefly Schlueter's arguments for equitable or statutory tolling while either his PCRA petition or his motion to reinstate his direct appeal nunc pro tunc was pending in the state courts. We do note that Merritt v. Blaine, 326 F.3d at 161-65, forecloses Schlueter's argument for statutory tolling during the time his untimely PCRA petition was pending as it holds that a federal habeas court for purposes of

---

(E.D. Pa. Dec. 21, 1998), in which the district court applied equitable tolling where the petitioner's attorney promised to file a timely federal habeas petition, but filed it five months late. Quite aside from the circumstance that Boyd is not precedential, we find the case unhelpful to our current analysis as the district court issued the opinion in 1998 before we had provided much guidance on the subject of equitable tolling in the habeas context. Consequently, the equitable tolling standard utilized in Boyd arguably does not comport with our more recent pronouncements requiring a habeas petitioner to demonstrate that he was "prevented in an extraordinary way from asserting his rights." Johnson, 314 F.3d at 163.

[14]Our opinion should not be misread to condone or excuse Lauer's conduct. To the contrary we acknowledge that arguably Lauer's conduct was unacceptable and fell below professional standards. On the other hand, fairness to Lauer requires that we point out that he could not find what he regarded was a basis for a PCRA claim.

---

[15]We disagree with the dissent's position that we should remand to the district court to consider whether Schlueter exercised reasonable diligence. Dissenting opinion at 7. The magistrate judge concluded that "the delay in learning of an office sharing relationship between the prosecutor and defense counsel did not demonstrate the exercise of due diligence." App. at 15 n.1. The issue of Schlueter's diligence also was raised at oral argument before the district judge. The district judge subsequently approved and adopted the magistrate judge's report and recommendation. Because the district court already has ruled that Schlueter did not exercise reasonable diligence, a remand would be pointless.

11

section 2244(d)(2) defers to a state court's ruling dismissing a PCRA petition as untimely.[16] Accordingly it is clear that his untimely state PCRA claim cannot possibly help him.

We also reject his claim that somehow filing his motion to restore his appellate rights on June 22, 1998, more than one year after the AEDPA period of limitations had run, should lead to statutory tolling on the basis that the motion was a "properly filed" application for post-conviction review under section 2244(d)(2). While he predicates this argument on the theory that his motion was denied "on the merits," appellant's br. at 46, inasmuch as the state court pointed out that Schlueter had "knowingly and voluntarily waived his appellate rights," it is clear that the appeal was not permitted because it would have been

---

[16]Schlueter contends that we "wrongly decided" Merritt v. Blaine, appellant's br. at 54, but this panel cannot entertain that argument. We also note that even if we held that the one-year period of limitation began running under section 2244(d)(1)(D) on December 9, 1997, in view of Merritt v. Blaine there would not have been statutory tolling of the one-year period of limitation governing Schlueter's federal habeas corpus action while his PCRA petition was pending. Thus, inasmuch as he commenced his federal action on October 12, 2000, it would have been untimely.

untimely and there was no basis to circumvent the time bar and not because Schlueter could not have demonstrated that there had been a reversible error in the trial proceedings so that an appeal would have been futile. We decline to adopt a construction of the AEDPA that permits a petition for habeas corpus to be deemed timely on the basis of section 2244(d)(2) providing for tolling for "properly filed application[s] for state post-conviction . . . review" merely because the petitioner unsuccessfully has sought the right to appeal nunc pro tunc years after his unexercised right to file a timely direct appeal has expired. See Douglas, 359 F.3d at 261-63.

Finally we recognize that the dissent contends that there is a strong argument for equitable tolling predicated on various Pennsylvania state appellate decisions based on Schlueter's filing of the PCRA petition and his motion to reinstate his direct appeal nunc pro tunc. Dissenting opinion at 3-4 n.2. This point is critical in the dissent's analysis as it points out that equitable tolling during the period from April 24, 1996, until December 9, 1997, "saves Schlueter's claim only if we also toll pending resolution of the state-court proceedings." Id. We need not discuss these state decisions as he pursued both forms of relief after the AEDPA period of limitations already had run.

### III. CONCLUSION

For the foregoing reasons, we

12

conclude that the district court properly dismissed Schlueter's habeas corpus petition as time barred by the one-year period of limitation. Accordingly, we will affirm the district court's order entered September 3, 2003.

**Ambro**, <u>Circuit Judge</u>, Dissenting

It is an underlying assumption of our legal system that attorneys actively pursue the best interests of their clients. All too often, attorneys make mistakes. The sad reality is that there are not enough willing defense attorneys to represent competently the interests of the many criminal defendants who cycle through the courts. And thus, necessarily, we afford substantial leeway to attorneys when it comes to "mere 'attorney error.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000).

But the distinction between mistake and malfeasance is profound. There can be little semblance of justice when an attorney assigned to protect a defendant ignores a blatant conflict of interest, and another counsel does nothing while promising more than once to protect the defendant's rights. If the facts are as Paul Schlueter has portrayed them, his trial counsel (George Blasco) disregarded his civil law partnership with the prosecutor (James Narlesky), and his appellate counsel (Philip Lauer) affirmatively misrepresented that he would timely file a petition for relief in order to forestall the inevitable accounting for his long-promised and

13

paid-for legal services.[17]  Irony becomes Kafkaesque when the latter act of malfeasance shelters from review the former act of malfeasance.

I cannot in good conscience bury Schlueter's case before it sees the light of day.  AEDPA confers on federal courts the authority equitably to toll its limitations period in the interest of justice.  If any case is ripe for exercise of that power, this one is.  Accordingly, I respectfully dissent.

*　*　*　*　*

As the majority explained, Schlueter's *habeas* petition would ordinarily have been due on April 23, 1997.  *See Douglas v. Horn*, 359 F.3d 257, 261 (3d Cir. 2004).  He did not file his petition, however, until October 12, 2000.  Thus the petition was timely only if the limitations period was tolled.

The AEDPA filing deadline is subject to equitable tolling "when the principles of equity would make the rigid application of a limitation period unfair." *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (internal quotation omitted).  While this principle on its face is broad, it is to be applied sparingly.  Equitable tolling is appropriate when "the petitioner has in some extraordinary way been prevented from asserting his or her rights.  The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims." *Id*. at 618–19 (internal quotations omitted); *see also Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

We have concluded, as a general matter, that attorney error is not so "extraordinary" as to justify equitable tolling.  *See, e.g.*, *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002).  This rule makes sense, as attorney error is normally attributed to the client.  *See, e.g.*, *United States v. Boyle*, 469 U.S. 241, 250 (1985).   But it does not follow that tolling based on deception of the kind alleged by Schlueter in this case is also foreclosed.

Schlueter and his parents wrote to and called Lauer on many occasions over a period of several months.  He falsely assured them that he was preparing a PCRA petition and would timely file.  But he made no such preparations.  After allowing the deadline to pass, he

---

[17]At the very least, I would remand for a determination by the District Court whether Lauer, reputed to be well qualified, did in fact affirmatively mislead his client. *See, e.g.*, *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (remanding for hearing to determine whether defendant was obligated to undertake further inquiry upon receipt of a letter from the court stating that no petition under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") had been filed, when attorney allegedly told the defendant's father that no record of his filing existed because the petition was filed directly with the judge).

ceased all communication with the Schlueters. He did not return their many phone calls or letters, nor did he timely return Schlueter's files despite repeated requests from Schlueter and his new counsel. Lauer's intentional abandonment of Schlueter's case cannot plausibly be labeled "error." His behavior, I believe, was sufficiently egregious to bring it "within the narrow line of cases in which lawyer misconduct justifies equitable tolling." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 238 (3d Cir. 1999).

The law of agency provides a useful framework for understanding the distinction between error and misconduct. *See Baldayaque v. United States*, 338 F.3d 145, 154 (2d Cir. 2003) (Jacobs, J., concurring). Ordinarily, "[a]ttorney ignorance or inadvertence" does not excuse a petitioner's non-compliance with AEDPA, because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (rejecting attorney error as "cause" for procedurally defaulted habeas claims); *see also McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 853 (3d Cir. 1996) ("It is, of course, beyond cavil that the attorney-client relationship is an agent-principal relationship."). We assume, for better or worse, that a lawyer is acting as the petitioner's agent, and the petitioner therefore "bear[s] the risk of attorney error." *Coleman*, 501 U.S. at 752–53; c*f. Link v. Wabash R.R. Co.*,

370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent . . . .").

But it is a fundamental principle of agency law that the knowledge of an agent is not attributed to the principal when the agent is acting in a manner adverse to the interests of the principal. Restatement (Third) of Agency § 5.04 (Tentative Draft No. 4 2003) ("Notice is not imputed to the principal of a fact that an agent knows or has reason to know if the agent acts adversely to the principal in a transaction or matter for the agent's own purposes . . . ."). Mere attorney error does not constitute an "extraordinary circumstance" because a circumstance, to be extraordinary, must be beyond the prisoner's control. *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Thus, we have explained, a client who relies on the faulty advice of his lawyer has not encountered an obstacle to filing that is external to his conduct. *Johnson*, 314 F.3d at 162–63. Conversely, when, as here, an attorney ceases altogether to serve the interests of his client, the law of agency is clear that the attorney acts alone.

This central tenet—that attorney malfeasance should not be attributed to the client—paves any number of parallel paths to tolling in this case. We might conclude that Schlueter, had Lauer not represented that he was acting on the case, would timely have filed a petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, *et seq.,* prior to the

15

deadline that would have presented Blasco's clear conflict as trial counsel. Thus we might equitably toll the statute from April 24, 1996, the day it began to run, to December 9, 1997, the day that Schlueter's new counsel was put on notice of the relationship between Blasco and Narlesky.[18] We might hold that

---

[18]Tolling for this minimum duration saves Schlueter's claim only if we also toll pending resolution of the state-court proceedings. The analysis is complex, but it can be summarized as follows.

On February 3, 1998, Schleuter filed a petition for post-conviction relief under PCRA. He argued that his PCRA petition should be deemed timely because the delay in filing was based on ineffective assistance of counsel retained to file the petition. In June 1998 he separately filed a petition to appeal *nunc pro tunc*. The PCRA Court denied the PCRA petition as untimely and rejected Schlueter's request for an appeal *nunc pro tunc*. On October 22, 1999, the Pennsylvania Superior Court affirmed. Schlueter's subsequent petition for allowance of an appeal was denied by the Pennsylvania Supreme Court on August 28, 2000.

I note first that statutory tolling will not save Schlueter's claim. 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection." But neither the PCRA petition nor the *nunc pro tunc* petition was "properly filed" for the purposes of Pennsylvania law. Our Court has stated that "an untimely PCRA petition does not toll the statute of limitations for a federal habeas corpus petition." *Merritt v. Blaine*, 326 F.3d 157, 165 (3d Cir. 2003). Nor is statutory tolling available based on the *nunc pro tunc* petition, notwithstanding our recent decision in *Douglas v. Horn,* 359 F.3d 257, 263 n.11 (3d Cir. 2004). *Douglas* suggested that statutory tolling might apply to *nunc pro tunc* petitions filed before the Pennsylvania Supreme Court's decision in *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999), which reversed a series of decisions by Pennsylvania lower courts indicating that *nunc pro tunc* petitions were compatible with PCRA under appropriate circumstances. *See, e.g.*, *Commonwealth v. Hall*, 713 A.2d 650, 653 (Pa. Super. 1998), *rev'd in part, vacated in part*, 771 A.2d 1232 (Pa. 2001). But in *Commonwealth v. Eller*, 807 A.2d 838 (Pa. 2002), the Pennsylvania Supreme Court held that *Lantzy* did not announce a new rule and thus applies retroactively. Therefore, though Schlueter's *nunc pro tunc* petition was filed more than a year before *Lantzy* was decided, it was not properly filed for the purposes of Pennsylvania law.

Although I would not statutorily

16

toll the AEDPA limitations period under § 2244(d)(2), a strong argument exists for equitable tolling based on Schlueter's good-faith efforts to avail himself of state post-conviction relief. In *Merritt*, 326 F.3d at 170 n.10, we preserved the possibility that equitable tolling may be appropriate where, as here, a PCRA petition is late based on newly discovered facts of a "legitimate" nature. *Id*. ("Undoubtedly, there will be other habeas petitioners who find themselves in similar situations where their need to exhaust state remedies will create a tension with the one-year statute of limitations in AEDPA. . . . The federal courts should seek ways to ameliorate the consequences for these petitioners in appropriate cases."). This may be the special case that panel had in mind.

The argument for equitable tolling based on Schlueter's *nunc pro tunc* petition is even stronger. The Pennsylvania Superior Court's decision in *Hall*, 713 A.2d at 653, announcing that *nunc pro tunc* petitions were permissible under appropriate circumstances despite the language of PCRA, was issued on June 3, 1998. Based on that decision, Schlueter's counsel concluded that Schlueter was eligible for *nunc pro tunc* relief and would therefore be obligated to pursue it under AEDPA in order to exhaust state remedies. He similarly relied on Pennsylvania case law when he appealed the PCRA court's decision in December 1998; although *Lantzy* had by then been

equity requires us to toll the statute to the day that Schlueter's *habeus* petition was finally filed. Or we might even conclude that Schlueter falls within the ambit of § 2244(d)(1)(D), because the conflict of interest, though discoverable by Lauer based on his alleged knowledge of Blasco and Narlesky's office sharing arrangement, was not reasonably ascertainable by an incarcerated inmate who was forestalled from pursuing his case by the false assurances of a third party.[19]

decided, several post-*Lantzy en banc* opinions of the Superior Court (which would later be overruled by *Eller*) held that it would not apply retroactively. *See, e.g.*, *Commonwealth v. Garcia*, 749 A.2d 928, 933 (Pa. Super. Ct. 2000) (en banc), *rev'd*, 811A.2d 994 (Pa. 2002); *Commonwealth v. Hitchcock*, 749 A.2d 935, 939-40 (Pa. Super. Ct. 2000) (en banc).

[19]The majority is "convinced that if Schlueter had exercised due diligence, he could have discovered the Blasco/Narlesky arrangement long before the AEDPA became effective." But this task would have been harder than it sounds. While various individuals were aware of the office sharing arrangement, few (if any) knew the extent of the relationship between the two attorneys. The evidence strongly suggests that Narlesky affirmatively concealed the relationship. According to Schlueter, Narlesky went so far as to misrepresent to the PCRA court the

Other courts have applied equitable tolling under circumstances like these. In *Baldayaque*, 338 F.3d at 152, for example, an attorney failed timely to file a § 2255 motion requested by his client and made inadequate efforts to communicate with him. The Second Circuit held that the attorney, "[b]y refusing to do what was requested by his client on such a fundamental matter, . . . violated a basic duty of an attorney to his client." His actions, the Court continued, "were far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary'" and thereby "justify the application of equitable tolling to the one-year limitations period of AEDPA." *Id.* at 152–53. *See also Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003) ("Based upon the unique facts of this case, where an attorney was retained to prepare and file a petition, failed to do so, and disregarded requests to return the files pertaining to petitioner's case until well after the date the petition was due, we agree that equitable tolling of the deadline is appropriate."); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) ("Wynn's allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a 'rare and

character of his partnership with Blasco. The conflict was particularly difficult to discover because Blasco's death in 1988 dissolved that partnership.

extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations."); *cf. Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 16 F.3d 1386 (3d Cir. 1994) (tolling based on the death of the petitioner's attorney).

In our Circuit, the principal case on point is *Seitzinger*. It involved a Title VII claim, though we have since applied its reasoning to *habeas* cases. *See, e.g.*, *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003). The Supreme Court has cautioned that in the Title VII context "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't Veteran Affairs*, 498 U.S. 89, 96 (1990). Our task in *Seitzinger* was to decide whether misconduct by the plaintiff's attorney was merely "garden variety" or, rather, was something more egregious. The plaintiff alleged that she repeatedly asked her attorney whether he had filed a complaint, and each time he misrepresented to her that he had. Under these circumstances, we concluded that equitable tolling was appropriate. *Seitzinger*, 165 F.3d at 241.

Of course, *Seitzinger* also requires that the client be "reasonably diligent" in pursuing his or her claims. But the facts of *Seitzinger* leave little doubt that Schlueter has met that burden. In concluding that the plaintiff in *Seitzinger* was diligent, we emphasized that she: (1) hired an attorney to file her civil complaint; (2) "contacted him before the

filing deadline, which she knew about in broad terms, to ensure that he had filed the complaint"; and (3) repeatedly called him in order to obtain a copy of the complaint and monitor the status of her case. *Id.* at 241. All of these factors are true in Schlueter's case as well. In fact, Schlueter and his family were, if anything, more diligent. They apprised their attorney of the precise filing deadline (whereas Seitzinger was aware, "in broad terms," that a deadline existed) with ample time to prepare a petition. In addition to their phone calls, the Schlueters wrote several letters seeking to ensure that the PCRA petition would be filed prior to the deadline. And they received written assurances that a petition would timely be filed.

Once the deadline had passed, the Schlueters did everything that could reasonably be expected of them. When their phone calls from Lauer were not returned, they wrote to the clerk's office directly. That office did not respond until March 18, 1997. The time between the Schlueters' discovery of Lauer's failure to file and their retaining new counsel was just over two months. After that, matters were largely out of Schlueter and his counsel's hands. Lauer simply did not turn over the files for many months.

The majority dismisses Schlueter's efforts as inadequate. They suggest that he was not entitled to rely on the two written assurances by the attorney whom he had hired to pursue his case; rather, on New Year's Day of 1997, he should have ascertained whether Lauer had indeed filed as promised. Never mind that Lauer had ceased to return phone calls on Schlueter's behalf. Never mind that when the Schlueters, having received no word from Lauer for months, inquired with the clerk's office whether a petition had been filed, it was nearly forty days before they received a response. Schlueter, says the majority, might have done more.

This, I suppose, is theoretically true. But it blinks reality to suggest that Schlueter might have retained substitute counsel willing to prepare a petition within the two short weeks between the end of 1996 and the PCRA filing deadline. Still, he might have filed his own PCRA petition *pro se*, just in case. That would have been supremely diligent.

But supreme diligence is not required. On the contrary, the standard is a relatively modest one. Schlueter's diligence need only have been reasonable under the circumstances. *Cf. Baldayaque*, 338 F.3d at 153 ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence.") (emphasis in text). I believe that Schlueter's protracted efforts handily qualify. But if the majority is not convinced, it seems to me better to remand for the District Court to consider this issue in the first instance rather than dismiss outright his *habeus* petition. *See id.*

19

Still, the majority insists, *Seitzinger* is distinguishable. If that is so, it is because the urgency of tolling is far stronger in Schlueter's case. The attorney in *Seitzinger* nearly cost his client the right to seek recovery for gender and age discrimination by her employer. But the stakes in this case are far higher—life imprisonment without the possibility of parole.

The gravity of Schlueter's situation is self-evident. "Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996) (emphasis omitted). The majority declines to exercise its power to rectify a fundamental inequity—that Schlueter's appellate counsel, rather than assisting him in obtaining the relief he was retained to pursue, crippled Schlueter's diligent efforts timely to obtain post-conviction relief for the tainted representation he received from his defense attorney at trial. Thus no court will ever pass on the merits of his *habeas* claim. Because I believe that under these circumstances "the principles of equity . . . make the rigid application of [the AEDPA] limitation period unfair," *Miller*, 145 F.3d at 618 (internal quotations omitted), I respectfully dissent.

20