**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2115-18T3

JOSE VELAZQUEZ,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

        Argued telephonically May 26, 2020 –
        Decided June 12, 2020

        Before Judges Ostrer and Vernoia.

        On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-90216.

        Jennifer L. Gottschalk argued the cause for appellant.

        Nels J. Lauritzen, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey David Padgett, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Jose Velazquez appeals from the New Jersey Division of Pension and Benefits (Division) final decision affirming the Police and Fireman's Retirement System (PFRS) Board of Trustees' (Board) rejection of his appeal from a March 11, 2014 determination he is not eligible to file an application for an accidental disability retirement allowance because he was not a member in service. The Division concluded Velazquez's appeal, which was filed four years after the March 11, 2014 determination he was not eligible to file the application, was time-barred under N.J.A.C. 17:1-1.3(b). We agree and affirm.

I.

Velazquez first enrolled in PFRS in 2000, when he became employed by the Camden County Department of Corrections. Less than a year later, he became employed by the City of Camden as a police officer, and transferred his enrollment in PFRS under his new position.

In August 2005, Velazquez applied for an accidental disability retirement allowance, to be effective September 1, 2005. The application sought an accidental disability retirement allowance based on a work-related incident that occurred nine months earlier on December 5, 2004. Velazquez subsequently

changed his retirement date to February 1, 2006, and, later, requested a change of his retirement date to August 1, 2006. On July 17, 2006, Velazquez cancelled his planned retirement and was advised "if and when [he] decide[d] to retire, it [would] be necessary for [him] to file a new retirement application." Velazquez returned to full duty as a police officer on September 26, 2006.

On January 22, 2007, the Camden police department suspended Velazquez with pay for violating the department's rules and regulations. More particularly, Velazquez was suspended because the Camden County Prosecutor determined Velazquez could not possess a weapon for any purpose as the result of a domestic violence incident. Following an initial hearing, Velazquez was suspended on March 14, 2007, without pay pending the outcome of a departmental hearing.

Velazquez subsequently obtained other public employment and, as a result, became enrolled in the Public Employees' Retirement System on September 1, 2008. In November 2008, the Board advised Velazquez his PFRS account would expire on March 31, 2009, because he last contributed to his PFRS account in March 2007.

On October 6, 2011, Camden terminated Velazquez from his position as a police officer. Velazquez appealed the termination of his employment to the

Civil Service Commission, and subsequently filed separate civil litigation related to the termination of his employment. When his employment with Camden ended on October 6, 2011, Velazquez had no pending application for an accidental disability retirement before the PFRS.

On November 19, 2012, Velazquez submitted a new application to PFRS for an accidental disability retirement allowance based on the same December 5, 2004 incident for which he sought the allowance in his August 2005 application. By letter dated November 27, 2012, the Division notified Velazquez that it determined he "did not file [his] application within five . . . years from the date of the [December 5, 2004] accident that caused the alleged disability," and that the Board could not consider the application unless Velazquez demonstrated the failure to file the application within the five-year period was "due to a delayed manifestation of the disability or to circumstances beyond [his] control." The Division further advised that if the necessary documentation supporting the late filing was not provided within sixty-days, Velazquez's application would be cancelled.

Velazquez's then-counsel sent a December 19, 2012 letter to the Division, advising he was in the process of obtaining medical documentation to support the filing of the application more than five-years after the December 5, 2004

4

incident, and he requested additional time to obtain the information. In a February 8, 2013 letter to Velazquez's counsel, the Board acknowledged receipt of the request for "additional time to submit the appropriate documentation on" Velazquez's behalf, but noted that no information or documentation had been supplied. The Board requested that counsel notify it within ten days whether he intended to submit additional information or wished to close the matter. The record is devoid of any evidence the requested additional information was ever supplied.

In response to an inquiry made by Velazquez, the Division notified him in a January 28, 2014 letter that his November 2012 application for an accidental disability retirement allowance was rejected because he was removed from his position on October 6, 2011, and, therefore, he was not a member in service when the application was filed. The letter, which was also sent to Velazquez's counsel, informed him of his right to appeal from the decision to the Board. Velazquez appealed.

In a March 11, 2014 letter decision addressed to Velazquez's counsel, the Board explained Velazquez's employment with the Camden police department terminated on October 6, 2011, and he did not file his application for an accidental disability retirement allowance until November 2012. The Board

found Velazquez was not a member in service under N.J.A.C. 17:4-6.7 when he filed his application, and, therefore, the application was denied in accordance with N.J.S.A. 43:16A-7, which permits the filing of an application for an accidental disability retirement allowance by "a member-in-service." The Board also denied the application because it was not supported by two medical reports as required by N.J.A.C. 17:4-6.1(d).

The decision also notified Velazquez that if he disagreed with the Board's decision, he had forty-five days to submit a written statement to the Board setting forth the reasons for his disagreement with its decision. The decision further advised that "[i]f no such written statement is received within the [forty-five-day] period, the determination of the Board shall be final." The forty-five-day time period ended on April 26, 2014.

Velazquez did not file the required written statement appealing the Board's decision by April 26, 2014, and, indeed, he waited more than four years to challenge the Board's March 11, 2014 determination. In a March 13, 2018 letter to the Board, Velazquez's new counsel requested that her letter be "consider[ed] . . . an appeal" from the Board's March 11, 2014 decision denying Velazquez's application for an accidental disability retirement. The letter also noted Velazquez's appeal from Camden's termination of his employment had

A-2115-18T3

been resolved on March 5, 2018, in the Office of Administrative Law with Velazquez's withdrawal of his appeal without prejudice.[1]

On July 9, 2018, Velazquez and his counsel appeared before the Board, and requested that it permit an out-of-time appeal of the Board's March 11, 2014 decision. Velazquez's counsel presented written submissions and exhibits to the Board supporting the request.

In a July 11, 2018 letter decision, the Board noted that it considered Velazquez's submissions, and it explained he waited "almost four years beyond the regulatory timeframe permitted" under N.J.A.C. 17:1-1.3(b) to file his appeal. The Board determined Velazquez failed to present good cause permitting a relaxation of the timeframe for the filing of the appeal, and it denied his request that the Board consider his appeal from its March 11, 2014 decision.

The Board later denied Velazquez's request for reconsideration of its decision and rejected his request for a hearing in the Office of Administrative Law, finding there were no facts in dispute requiring a hearing. The Board also

---

[1] The record on appeal includes limited correspondence related to his appeal to the Civil Service Commission from Camden's termination of his employment, as well as some orders entered in the proceedings by the Office of Administrative Law. We discern from the limited information provided that there were numerous procedural issues and delays during the proceedings which, at least in part, explain the lengthy pendency of that matter.

A-2115-18T3

directed that the Board secretary prepare a draft of "detailed Findings of Fact and Conclusions of Law that will . . . become the Board's final administrative determination" upon its formal adoption by the Board.  It appears the Board adopted Findings of Fact and Conclusions of Law denying Velazquez's request for reconsideration and for a hearing on December 10, 2018.[2]

Velazquez appealed from the Board's decisions.  In its final agency determination, the Division found the Board's March 11, 2014 decision advised Velazquez and his counsel that an appeal from a denial of his application must be filed within forty-five days.  The Division further found the Board was not informed Velazquez had appealed the termination of his employment with Camden until his current counsel mentioned that fact in her March 13, 2018 letter requesting permission to appeal from the Board's March 11, 2014 denial of his application.  The Division determined Velazquez was aware the appeal of his termination was pending in March 2014, and, in support of his request that the Board accept an appeal filed four years beyond the regulatory deadline, Velazquez did "not present new, previously unavailable information" and did

---

[2]  The Findings of Fact and Conclusions of Law adopted by the Board on December 10, 2018, are not included in the record on appeal. See R. 2:6-1(a)(1) (stating the appendix "shall contain . . . such other parts of the record . . . as are essential to the proper consideration of the issues").

not demonstrate "good cause to reopen" the March 11, 2014 decision. The Division rejected Velazquez's request for leave to appeal out of time. This appeal followed.

## II.

Our "review of administrative agency action is limited. 'An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citations omitted). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (citation omitted).

"[C]ourts afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). "Such deference has been specifically extended to state agencies that administer pension statutes," because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (citations omitted). However, "[a]n appellate court, . . . is 'in no way

9

bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Richardson, 192 N.J. at 196 (citation omitted). We "apply de novo review to an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

Under N.J.A.C. 17:1-1.3(b), the Board's March 11, 2014 decision became final unless Velazquez "file[d] a request for a hearing within [forty-five] days after the date of the written notice of the decision." Velazquez does not dispute he received the Board's decision on or about March 11, 2014; he was aware of the forty-five-day deadline for filing his request for a hearing; and he failed to file a timely appeal.

Velazquez instead argues the Board and the Division erred because he was entitled to equitable tolling of the forty-five-day deadline due to "his disabling PTSD and depression, and his attorneys' collective omissions to act on his behalf to secure his pension benefits." He claims he "had at least four attorneys pursuing claims . . . over his suspension and termination" from the Camden police department, "yet none had completed the cases in [Velazquez's] favor" and the attorneys either forgot or ignored Velazquez's accidental disability retirement claim. He also asserts the Board "either misled him or ignored him about the status of his application and account."

"Equitable tolling is traditionally reserved for limited occasions."  F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012).  A statute of limitations may be tolled "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum . . . ."  Ibid.; see also Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002).

Equitable tolling affords relief from "inflexible, harsh or unfair application of a statute of limitations, but it requires the exercise of reasonable insight and diligence by a person seeking its protection."  Villalobos v. Fava, 342 N.J. Super. 38, 52 (App. Div. 2001).  However, "absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Freeman, 347 N.J. Super. at 31.

Velazquez makes no showing his failure to timely file his appeal from the Board's March 11, 2014 decision was the result of trickery or because he was misled about his appeal rights.  He argues the Board misinformed him about the reason for its rejection of his application for an accidental disability retirement,

11

but the March 11, 2014 decision left not room for confusion—it expressly stated respondent's application was rejected because he was not a member in service when he filed his application in November 2012 since his employment with Camden ended in October 2011, and because he failed to provide the required medical reports. The record also established the Board acted in exacting compliance with the requirements of N.J.A.C. 17:1-1.3(d); the March 11, 2014 decision included a notice advising Velazquez he was required to file his appeal from the Board's decision within forty-five days or the decision would become final.

Moreover, Velazquez failed to present any evidence demonstrating he was prevented from exercising his right to appeal. See F.H.U., 427 N.J. Super. at 379. He argues in conclusory fashion he is entitled to equitable tolling because he has PTSD, but he did not present any competent evidence demonstrating his PTSD prevented him from timely filing his appeal in 2014, or that his PTSD prevented him from filing an appeal from the March 11, 2014 decision at any time during the ensuing four years.[3]

---

[3] The psychiatric and psychological reports submitted to the Board and Division in connection with Velazquez's request to file his appeal four years beyond the deadline are from 2006 and 2013, prior to the issuance of the Board's March 11, 2014 decision. Velazquez did not provide any reports stating that any purported

The record also is bereft of any evidence showing Velazquez exercised diligence in pursuing the appeal from the March 11, 2014 decision. As he acknowledges, equitable tolling requires a plaintiff to "diligently pursue their claims" because although it "'affords relief from inflexible, harsh or unfair application of a statute of limitations,' [it] does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims." Freeman, 347 N.J. Super. at 31-32 (quoting Villalobos, 342 N.J. Super. at 52). Velazquez does not, however, dispute he received the decision, which clearly advised it would become final if an appeal was not filed within forty-five days. Yet, he failed to present evidence he took any action to ensure an appeal was timely filed or pursued over the next four years. In other words, he made no showing of the requisite diligence in pursing his appeal.

Velazquez faults the purported failures of the numerous attorneys he employed over the years concerning his employment related issues, the appeal of his termination, and his application for an accidental disability retirement. "[I]t has been held that '[i]n non-capital cases, attorney error, miscalculation, inadequate research or other mistakes have not been found to rise to the level of

---

illness or disability interfered with his ability to diligently pursue a timely appeal during the four years following the Board's decision.

the "extraordinary" circumstances required for equitable tolling.'" Binder v. Price Waterhouse & Co., 393 N.J. Super. 304, 313-14 (App. Div. 2007) (quoting Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001)). Velazquez relies on the Third Circuit Court of Appeals's decision in Schlueter v. Varner, for the proposition that "egregious attorney misconduct may justify equitable tolling." 384 F.3d 69, 77 (3d Cir. 2004). But, the court in Schlueter held "attorney malfeasance . . . without more, is not sufficient to warrant equitable tolling" of a statute of limitations. Ibid. A plaintiff "must also show he [or she] acted with reasonable diligence, and that the extraordinary circumstances caused his [or her] petition to be untimely." Ibid. (quoting Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003)); see also Binder, 393 N.J. Super. at 314 (same). The court in Schlueter rejected the plaintiff's claim his attorney's malfeasance required the equitable tolling of the statute of limitations because the plaintiff failed to present evidence he exercised reasonable diligence to ensure his petition was timely filed. Id. at 78.

The same result is appropriate here. Plaintiff failed to present evidence he exercised reasonable diligence to pursue a timely appeal from the March 11, 2014 decision. As noted, the record does not disclose any action taken by him to ensure the timely filing of his appeal. See Binder, 393 N.J. Super. at 314

14

(rejecting the assertion the plaintiff's attorney's errors equitably tolled the statute of limitations because the plaintiff did not show "he acted with reasonable diligence in filing the state court matter and . . . failed to present a legitimate reason why his filing was untimely"). We therefore discern no basis to conclude the Division arbitrarily, capriciously, or unreasonably rejected Velazquez's claim his appeal from the March 11, 2014 decision was timely based on equitable tolling grounds.

Velazquez also argues that tolling the time period for the filing of his appeal from the Board's decision "makes sense" because other litigation he prosecuted following the termination of his employment, and his appeal to the Civil Service Commission from the termination of his employment, "could have favorably resolved [his] employment issues with . . . Camden" and, if successful, "probably would have protected his PFRS pension." The assertion does not offer any justification for the failure to timely appeal the Board's March 11, 2014 decision or excuse the abject lack of any diligence by Velazquez in prosecuting a timely appeal. In addition, as it turns out, Velazquez was not successful in his appeal from Camden's October 2011 termination of his employment and, as such, it appears there is no basis to challenge the Board's

15

March 11, 2011 determination Velazquez was not entitled to apply for benefits in November 2012 because, at that time, he was no longer a member in service.

We recognize it is "well-settled . . . that since pension laws are remedial legislation, they must be liberally construed in favor of the persons intended to be benefitted thereby." Bumbaco v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 325 N.J. Super. 90, 94 (App. Div. 1999). It is also well-settled the Board has the authority to reopen a decision upon a showing of good cause. Duvin v. State, Dep't of Treasury, Pub. Emps.' Ret. Sys., 76 N.J. 203, 207 (1978). "[I]n the absence of legislative restriction," the Board has the inherent power "to reopen or to modify and to rehear orders previously entered by it." Ibid. However, the power to reopen, modify, or rehear orders "must be exercised reasonably, and application seeking its exercise must be made with reasonable diligence." Ibid.; see e.g., Steinmann v. State, Dep't of Treasury, Div. of Pensions, 116 N.J. 564, 573 (1989) (explaining "the Board may honor a pensioner's request to reopen [a] retirement selection after it is due and payable if a showing of good cause, reasonable grounds, and reasonable diligence has been made").

Measured against that standard, we are not convinced the Division's decision to deny Velazquez's request to file his appeal four years beyond the deadline was arbitrary, capricious, or unreasonable. Velazquez presented no

16

evidence establishing good cause for his long delay in filing his appeal after being notified in March 2014, that if he failed to file the appeal within forty-five days the Board's decision became final. He exercised no due diligence in pursuing the claim during the four-year period, and contrary to his assertions, there is no evidence he was misinformed or misled about the Board's decision, his right to appeal, or his obligation to appeal within the forty-five-day deadline. We are convinced the record lacks any showing of the good cause and due diligence required to allow the Division to ignore the regulatory deadline.

Velazquez devotes the balance of his brief to arguments concerning the merits of the Board's March 11, 2014 decision. We need not address those arguments because Velazquez did not timely appeal to this court from the Board's decision. See R. 2:4-1(b); R. 2:4-4(a). In addition, Velazquez presently appeals solely from an order denying his request for leave to file an untimely appeal from the Board's March 11, 2014 decision. The Division affirmed the Board's denial of the request, and, therefore, the Division did not address the merits of Velazquez's challenge to the March 11, 2014 decision. Because we are convinced the Division correctly denied Velazquez's request to file an

untimely appeal, we also find it unnecessary to address Velazquez's claims the Board erred by rejecting his application in 2014.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION